*294
 
 Peaesok, C. J.
 

 We do not concur in the opinion of his Honor as to the right of killing hogs that are in the habit of eating chickens. The position that such a hog is a public nuisance, and may be killed by
 
 any one,
 
 is not supported on principle or authority, and if recognised, would lead to monstrous consequences. Allow such a right, and the peace of society cannot be preserved, for its exercise would stir up the most angry passions, and necessarily result in personal collisions. This Court is of opinion that the owner of the chicken —much less a stranger could not justify killing the hog, although it afterwards comes upon his premises; admitting that a hog that has once killed a chicken, will kill all it comes across, and which it can catch. The range of the animal is limited, its depreciations will not extend to the premises of more than one or two individuals, (of whom its owner is apt to be the greatest sufferer): So that there is nothing to support the idea of its being a common nuisance. If the owner of the chicken brings an action for damages, he is required to prove a
 
 scien-ter,
 
 so as to put the owner of the hog in the wrong for not keeping it up, and it would be strange if a party is at liberty to take the law into his own hands, and redress his supposed grievances, by an extra-judicial remedy, under circumstances, which do not entitle him to a civil action.
 

 It may be the killing will be justified, by proving that the danger was imminent — making it necessary “ then and there” to kill the hog in order to save the life of the chicken, or prevent great bodily harm; but we are inclined to the opinion, that even under these circumstances, it is not justifiable to kill the hog. It should be impounded or chiven away, and notice given to the owner, so that he may put it up — at all events, this course is dictated by the moral duty of good neighborship.
 

 His Honor, we presume, was misled by a
 
 dictum
 
 in
 
 Dodson v. Mock,
 
 4 Dev. and Bat. Rep. 146. It was held, in that case, “ that although the dog had stolen the egg and caught the sheep, and had the other bad habits stated by the witnesses, the defendant was not justified in killing him.” This ruling was approved of, and Judge Gastoit, as a prelude to a
 
 *295
 
 playful estimation of the several offences, which
 
 “
 
 had given the dog a bad name,” remarks : “ It is not denied that a dog may be of such a ferocious disposition, or predatory habits, as to render him a nuisance to the community, and such a dog, if permitted to go at large, may be destroyed by any person.” No authority is cited for this dictnm. It is certainly erroneous in assuming that any person other than one specially incommoded or aggrieved, may abate a common nuisance;
 
 3
 
 Black. Com. 5, and we imagine that dogs of the kind referred to, that behave so badly as to become outlaws, have rarely existed, except “ mad dogs.” In
 
 Parrott
 
 v. Hartsfield, 4 Dev. and Bat. 110, a dog was discovered about sunrise in an enclosed pasture in the act of killing sheep, two were dead and four dangerously wounded. The defendant, the owner of the sheep, went with his gun, the dog escaped, but about two hours afterwards, returned, and was near the pasture fence when the defendant shot and killed it. It was held that these facts made out a justification, on the ground, that the killing was not to punish past wrongs, but to prevent a wrong that was impending, and the same eminent Judge concludes his opinion with the remark,
 
 “
 
 It hath always been taken for the law, (and universal usage is high evidence of the law) that a sheep-stealing dog, found lurking about, or roaming over a man’s premises, where sheep are kept, incurs the penalty of death.” The leading case is,
 
 Wadhurst
 
 v. Damme, Croke James 45, “ Trespass for killing a dog' — plea, the defendant was seized in fee of a warren ; the dog was divers times there killing conies, and the defendant finding him there, running at conies killed him.” By all the Court “ the justification is good, because it being alleged that the dog used to be there killing conies, it is a good cause for killing him in salvation of the conies; for having used to hunt the warren, he cannot otherwise be restrained.”
 
 Yelverton
 
 doubted, “ because it is not alleged that the master was
 
 soiens
 
 of that quality, or had warning given him.”
 

 Popham, “ The common use of England is to kill
 
 dogs and cats
 
 in all warrens, as well as any vermin; which shows that
 
 *296
 
 the law bath been always taken to be that they may well kill them ; so, the justification is good.” It will be observed that Judge Gaston’s
 
 dieta
 
 are enlargements upon this of Popham, which is confined to
 
 dogs
 
 and
 
 oats
 
 and
 
 venmn
 
 found in warrens. But taking the law to be, that the owner of sheep is justified in killing a dog that has killed some of them, and is lurking about apparently for the purpose of killing others, it does not support the general proposition laid down by his Honor, even in its application to
 
 dogs,
 
 and there is a marked distinction between a
 
 hog
 
 and a
 
 dog ;
 
 the one is roving in his habits and no fence can stop it — it is of no use, if constantly confined, and its service is rather for amusement than profit to man. The other roves but little ; is easily restrained by fences; confinement does not destroy its usefulness, but is necessary in order to fatten and make it fit for food, and it is one of the most valuable of domesticated animals. So that “ putting it up” is the means usually and readily resorted to when a bad habit is acquired.
 

 It is provoking to see an
 
 old sow
 
 trying to catch young chickens and snapping up one every now and then, in spite of the noises and energetic remonstrances of the hen, but it is not reason, and therefore not the law, that so valuable an animal may be destroyed to save the life of an unfledged chicken; at all events, the danger must be imminent and the necessity be fully made out. In our case, the “ defendant proved a special killing by the hog of a chicken and another attempt to do so,” and afterwards “ the hog, being near the fence of the defendant, where his chickens were in the habit af running, but not in the act of doing any deed that would injure the defendant or his property, was killed by him,” the owner having no
 
 soiens
 
 of this quality of the hog, and having no warning thereof given to him. Upon this evidence, his Honor ought to have instructed the jury, that the plea of “justification” was not sustained, and it was error to lay down the general proposition, that the hog had become a public nuisance, which any man had a right to abate by killing.
 
 Venire de novo.
 

 Per Curiam, Judgment reversed.