The defendants were indicted in the court below for the crime of willfully killing a dog, the property of the prosecutor. It would be vain and unprofitable to discuss, for the purpose of deciding, that a dog is a living creature within the meaning of Revisal, sec. 3299, under which the indictment was drawn and presented by the grand jury. We have held that he is a subject of property, a domesticated animal, and not merely ferae naturae, and that a civil action may be maintained for damages caused by an injury to him, though he may have been guilty of some "youthful indiscretion" or harmless transgression. A dog is like a man in one respect, at least — that is, he will do wrong sometimes; but if the wrong is slight or trival, he does not thereby forfeit his life. The opinion of Judge Gaston in Dodson v. Mock, 20 N.C. (Anno. Ed.), 282, has been generally taken as a clear and accurate statement of the law in regard to the right of property in this much petted and sometimes useful animal. That was a civil action to recover damages for killing the plaintiff's dog, the defendant contending that a dog was not property, and, therefore, no action would lie for any injury to him. In view of this contention, Judge Gaston said: "It was not necessary for the maintenance of the action that the plaintiff's dog should be shown to have pecuniary value. Dogs belong to that class of domiciled animals which the law recognizes as objects of property, and whatever it recognizes as property it will protect from invasion by a civil action on the part of the owners. It is not denied that a dog may be of such ferocious disposition or predatory habits as to render him a nuisance to the community, and such a dog, if permitted to go at large, may be destroyed by any person. But it would be monstrous to require exemption from all fault as a condition of existence. That the plaintiff's dog on one occasion stole an egg, and afterwards snapped at the heel of the man (630) who had hotly pursued him flagrante delicto; that on another occasion he barked at the doctor's horse, and that he was shrewdly suspected in early life to have worried a sheep, make up a catalogue of *Page 508 
offenses not very numerous nor of a very heinous character. If such deflections as these from strict propriety be sufficient to give a dog a bad name and kill him, the entire race of these faithful and useful animals might be rightly extirpated."
It was next held in S. v. Latham, 35 N.C. 33, that the owner has such property in a dog that an indictment for malicious mischief in killing him will lie. These cases were followed by others, deciding different questions, but all recognizing the general rule that a dog is property.Perry v. Phipps, 32 N.C. 259; Mowery v. Salisbury, 82 N.C. 177 (right to tax them). In S. v. Latham, supra, the indictment was for malicious mischief, and the judge, by his charge, let the guilt of the defendant turn altogether upon an affirmative answer to the question whether the defendant, in killing the dog, was acting in defense of his property, without regard to whether or not he did so from malice to the owner. This was held to be error, as the gist of the offense was malice to the owner, and the killing, from passion excited against the dog by the injury or threatened injury to property, was not any defense, provided the defendant was actuated by malice towards the owner. In that case, Judge Nash took occasion to say: "By the old authorities, a dog was not a subject of larceny, because it was without value. But, notwithstanding, it is a species of property, recognized as such by the law, and for an injury to which an action at law will be sustained. Dodson v. Mock, 20 N.C. 282. Many actions have been brought in this State, and in England, for injuries to such property. 8 Bl. Com., 393-4. If, then, dogs be personal property, they are protected by the law, and the owner has such an interest in them as that he can protect and defend them; and the destruction of them, from malice to the owner, is in law malicious mischief."
Although counsel did not so contend, we will say that the dog is not an animal of such base nature or low degree, whatever his pedigree (631) may be, as not to be entitled to the consideration and full protection of the law, or as to subject him to outlawry if he has a bad reputation, or at least a habit of killing fowls, so that if he lurks near where they are to be found, although they are protected by a sufficient fence or other barrier against his predatory and ferocious disposition, he may be killed, even if he is not engaged in the actual attempt to slay and devour his supposed prey, or the danger of his doing so is not so imminent or immediately threatening that a prudent and reasonable man would be led to believe that his property is in jeopardy. We cannot give our assent to this principle. Admit such a right, and the peace and good order of society would be seriously endangered and could not well be preserved, for the exercise of such a right would excite the most angry passions and resentment of the dog's owner and eventually *Page 509 
result in personal violence, thus disrupting the peace and quiet of the community. So thought Judge Pearson in Morse v. Nixon,51 N.C. 293. But we think that the dog is not an animal of such low origin and of such a base nature as to be beyond the pale of the law. The right to slay him cannot be justified merely by the baseness of his nature, but it is founded upon the natural right to protect person or property. He has the good-will of mankind because of his friendship and loyalty, which are such marked traits of his character that they have been touchingly portrayed both in song and story. Why, then, should he be declared an outlaw and a nuisance, and forfeit his life without any sufficient cause? This was never the law. Neither at the common law nor since the passage of our present statute prohibiting cruelty to anianimals [animals] can a dog be killed for the commission of any slight or trival [trivial] offense (S. v. Neal, 120 N.C. 614); nor to redress past grievances (Morse v. Nixon, supra). As said by Chief Justice Pearson
in the last cited case: "It may be the killing will be justified by proving that the danger was imminent — making it necessary `then and there' to kill the hog in order to save the life of the chicken, or prevent great bodily harm." It was well said by the Chief Justice in that case, that in order to recover damages in a civil action for injuries to property committed by a hog (or dog), the plaintiff must (632) prove, as we say, a scienter, that is, knowledge of his vicious propensities, as in the case of the deer in the Saratoga Park (99 U.S. 645), where it was held: "Certain animals Ferae naturae may doubtless be domesticated to such an extent as to be classed, in respect to the liability of the owner for injuries they commit, with the class known as tame or domestic animals; but inasmuch as they are liable to relapse into their wild habits and to become mischievous, the rule is that if they do so, and the owner becomes notified of their vicious habit, they are included in the same rule as if they had never been domesticated, the gist of the action in such a case, as in the case of untamed wild animals, being not merely the negligent keeping of the animal, but the keeping of the same with knowledge of the vicious and mischievous propensity of the animal. Wharton Negligence, sec. 922; Decker v. Cammon, 44 Me. 322. Three or more classes of cases exist in which it is held that the owners of animals are liable for injuries done by the same to the persons or property of others, the required allegations and proofs varying in each case. 2 Bl. Com., per. Cooley, 390. Owners of wild beasts, or beasts that are in their nature vicious, are liable under all or most all circumstances for injuries done by them; and in actions for injuries by such beasts it is not necessary to allege that the owner knew them to be mischievous, for he is presumed to have such knowledge, from which it follows that he is guilty of negligence in permitting the same to be at large. Though the *Page 510 
owner have no particular notice that the animal ever did any such mischief before, yet if the animal be of the class that is ferae naturae, the owner is liable to an action of damage if it get loose and do harm. 1 Hale P. C., 430; Worth v. Gilling, L. R., 2 C. P., 3. Owners are liable for the hurt done by the animal even without notice of the propensity, if the animal is naturally mischievous; but if it is of a tame nature, there must be notice of the vicious habit. Mason v. Keeling, 12 Mod., 332; Rex v. Huggins, 2 Ld. Raym., 1574. Damage may be done by a domestic animal kept for use or convenience, but the rule is that the owner is not liable to an action on the ground of negligence, (633) without proof that he knew that the animal was accustomed to do mischief. Vrooman v. Sawyer, 13 Johns. (N. Y.), 339; Buxendinv. Sharp, 2 Salk., 662; Cockerham v. Nixon, 33 N.C. 269. Domestic animals, such as oxen or horses, may injure the person or property of another, but courts of justice invariably hold that if they are rightfully in the place where the injury is inflicted, the owner of the animal is not liable for such an injury, unless he knew that the animal was accustomed to be vicious; and in suits for such injuries such knowledge must be alleged and proved, as the cause of action arises from the keeping of the animal after the knowledge of its vicious propensity. Jacksonv. Smithson, 15 Mee. W., 563; Van Leuven v. Lyke, 1 N.Y. 515;Card v. Case, 5 C. B., 632; Hudson v. Roberts, 6 Exch., 697; Dearth v.Barber, 22 Wis. 73; Cox v. Burbridge, 13 C. B., N.S., 430."
It would, therefore, be strange if a person is privileged to take the law into his own hands and redress supposed and past grievances by an extrajudicial method or remedy, under circumstances which may not entitle him to sue for and recover damages in a civil action. Such a view of the law was adopted in Dodson v. Mock, 20 N.C. 282, but it has been said of that case by the Court in Morse v. Nixon, supra (opinion byChief Justice Pearson), that Judge Gaston fell into error in his dictum that a dog may, by reason of his predatory habits, become a public nuisance, so that any person may kill him in order to abate the nuisance, although not specially injured or aggrieved. We think the law of this State is correctly stated by Judge Gaston (as far as he went) in Parrottv. Hartsfield, 20 N.C. 242 (Anno. Ed.), as follows: "The law authorizes the act of killing a dog found on a man's premises in the act of attempting to destroy his sheep, calves, conies in a warren, deer in a park, or other reclaimed animals used for human food and unable to defend themselves. Barrington v. Sumers, 3 Lev., 28; Leonard v. Wilkins, 9 John., 233." In the actual and necessary defense of property, it is not necessary to show that the owner of the dog knew of his (634) vicious propensities, or that there was no other mode of defending the things assailed. Com. Dig. Pleader, 3 m. 33.1, sec. 336. *Page 511 
"The law is different where the dog is chasing animals ferae naturae, such as hares or deer in a wild state, or combating with another dog. In these cases a necessity for the act of killing must be made out, or the killing will not be justified. Wright v. Ramscot, 1 Saun., 82; Vere v.Ld. Cawdor, 11 East, 567. The object of the law in conferring this authority is not to punish past wrongs, but to prevent wrongs impending or menaced. It may, therefore, be exercised before the injury is begun, if, in truth, it be imminent — for otherwise the preventive remedy may be too late." Parrott v. Hartsfield, supra. This Court (by ChiefJustice Pearson) in Morse v. Nixon, approved the rule as stated thus byJudge Gaston. It is true that Judge Pearson added this qualification or expressed this doubt: "But we are inclined to the opinion that even under these circumstances it is not justifiable to kill the dog. It should be impounded or driven away, and notice given to the owner, so that he may put it up. At all events, this course is dictated by the moral duty of good neighborship." But we conclude that the better doctrine is the first one stated by the learned Chief Justice and the one fully sustained by the opinion of the Court in Parrott v. Hartsfield, supra. If the danger to the animal, whose injury or destruction is threatened, be imminent or his safety presently menaced, in the sense that a man of ordinary prudence would be reasonably led to believe that it is necessary for him to kill in order to protect his property, and to act at once; he may defend it, even unto the death of the dog, or other animal, which is about to attack it. We understand this to be the law as declared in a very brief opinion of the Court (by Rodman, J.) in Williams v. Dixon,65 N.C. 416, citing and approving what is said to that effect in Parrotv. Hartsfield and Morse v. Nixon. It is taken for granted in Runyanv. Patterson, 87 N.C. 343, that if a hog or dog is caught in flagrantedelicto or "red-handed," that is, while in the act of injuring property, such as turkeys or chickens, he may be shot on the spot by their owner, citing the above cases. Why not if he is about to spring upon his prey and when the necessity of protecting his property reasonably appears to its owner to be just as imperative? Our statute, (635) Revisal, sec. 3299, makes it criminal to willfully or cruelly kill or injure any useful animal, employing that word in the sense of any "living creature," and "cruelty" is defined in the same section to mean "any act, omission, or neglect whereby unjustifiable physical pain, suffering, or death is caused or permitted."
So far as this case is concerned, and the point raised by the defendant, we do not think the statute has materially changed the law as formerly declared. The defendant is guilty at common law, and surely under the statute, if he unjustifiably killed the dog; and what is an unwarranted or unjustifiable killing has already been fully stated. *Page 512 
Upon the facts of this case, we are of the opinion, and so decide, that the defendants were guilty, and that while the judge erred when he charged that if the dog was actually killing the turkeys it would be no defense or justification for the killing, this error was harmless, as there was no evidence that the danger to the turkeys was imminent and the necessity to kill was apparent. The fact that the dog had visited the premises before, if it had been proven, would not justify the defendant's act in slaying him. It is not the dog's predatory habits, nor his past transgressions, nor his reputation, however bad, but the doctrine of self-defense, whether of person or property, that gives the right to kill. The dog was not in a position, with reference to the turkeys, to make the danger to them imminent, he being in the road or street outside the defendant's yard, with an impassable fence and closed gate between him and them. He could easily have been driven away without resorting to extreme punishment, for it was nothing but punishment inflicted upon him for his supposed past transgressions, that is, resentment and retaliation. It was an act unlawful at common law, and willful within the meaning of the statute, even as construed in S. v. Clifton, 152 N.C. 802.
No error.
Cited: Newell v. Green, 169 N.C. 463.
(636)