STATE OF NORTH CAROLINA v. CHARLES SIMMONS

No. 7713SC926

(Filed 16 May 1978)

**1. Animals § 7— killing dog—criminal offense**

The killing of a dog, the property of another, without justification has long been a criminal offense in this State. G.S. 14-360.

**2. Animals § 7— killing of dog—no evidence of self-defense—failure to instruct—no error**

In a prosecution of defendant for killing a dog, the property of another, the trial court did not err in failing to instruct the jury with respect to self-defense where there was no evidence that the dogs were attacking defendant or even threatening to attack or doing anything which would make a reasonable person think they were about to attack; there was no evidence that the dogs were ferocious or vicious or that either of them had ever caused any trouble whatever; and there was no evidence that defendant thought the dog was vicious.

APPEAL by defendant from *Smith, Donald L., Judge.* Judgment entered 24 August 1977, Superior Court, COLUMBUS County. Heard in the Court of Appeals 7 March 1978.

Defendant was tried in District Court under a warrant charging that he "unlawfully, willfully, and wantonly did cruelly overdrive, mutilate and kill a dog, the property of Tylon V. Mills". He was convicted in District Court and appealed to Superior Court. There he was convicted by the jury and appeals from the judgment entered on the verdict.

His only argument on appeal is that the court failed to instruct the jury with respect to self-defense. Such facts as are necessary for decision are set out in the opinion.

*Attorney General Edmisten, by Assistant Attorney General Archie W. Anders, for the State.*

*Ray H. Walton for defendant appellant.*

·MORRIS, Judge.

[1] The statute under which defendant was charged is G.S. 14-360 which provides, in pertinent part:

"If any person shall willfully . . . kill . . . , any useful beast, fowl or animal, every such offender shall for every such offense be guilty of a misdemeanor punishable by a fine not to exceed five hundred dollars ($500.00), imprisonment for not more than six months, or both. . . ."

The killing of a dog, the property of another, without justification, has long been a criminal offense in this State. *See State v. Latham*, 35 N.C. 33 (1851). In *State v. Smith*, 156 N.C. 628, 72 S.E. 321 (1911), the Court had before it on appeal a conviction for willfully killing a dog, the property of the prosecutor. The statute was substantially the same. The Court said: "It would be vain and unprofitable to discuss, for the purpose of deciding, that a dog is a living creature within the meaning of Revisal, sec. 3299 (now G.S. 14-360) under which the indictment was drawn and presented to the grand jury." *Id.* at 629. The Court discussed cases decided prior to the statute which had recognized that a dog is property and said:

"The right to slay him cannot be justified merely by the baseness of his nature, but it is founded upon the natural right to protect person or property. He has the good-will of mankind because of his friendship and loyalty, which are such marked traits of his character that they have been touchingly portrayed both in song and story. Why, then, should he be declared an outlaw and a nuisance, and forfeit his life without any sufficient cause? This was never the law. Neither at the common law nor since the passage of our present statute prohibiting cruelty to animals can a dog be killed for the commission of any slight or trival [sic] offense (*S. v. Neal*, 120 N.C., 614); nor to redress past grievances (*Morse v. Nixon, supra* [51 N.C., 293]). As said by *Chief Justice Pearson* in the last cited case: 'It may be the killing will be justified by proving that the danger was imminent—making it necessary "then and there" to kill the hog in order to save the life of the chicken, or prevent great bodily harm.' " *Id.* at 631.

And the Court concluded:

"It is not the dog's predatory habits, nor his past transgressions, nor his reputation, however bad, but the doctrine of

self-defense, whether of person or property, that gives the right to kill." *Id.* at 635.

[2]   When these principles are applied to the case before us, it becomes necessary to determine from the evidence whether the issue of self-defense should have been presented to the jury.

There is no dispute about the fact that the prosecuting witness and defendant's brother were having a dispute over some land and, on the day in question, the two were fighting at a point on the land in dispute. Defendant, according to his testimony, was asked to go "down there" by his sister-in-law, wife of the person who was fighting with the prosecuting witness at the time of the shooting. The State's evidence was that when he saw defendant, he, the prosecuting witness was on the ground, and defendant's brother was beating and kicking him. Defendant exited from a vehicle carrying a "long-type" firearm and was running in the direction of the fight. Defendant stopped and pointed the firearm in the direction of prosecuting witness. His brother then stopped the beating and hollered to defendant to "kill them dogs". Defendant was then "some 50 yards plus" from where prosecuting witness was. Defendant called the dogs, and they started toward him. When they got some distance from him, they turned and started circling away from him, and as they turned, defendant shot and killed the dog named Silver. The dog got no closer to defendant than 40 yards.

Defendant testified that when he got to the point where he could see around the hedgerow, he saw two men in the northeast corner of the field. One was on his knees and appeared to have his hands on the ground. The other one "seemed to have his hand up on his head and his right arm holding it up in the air." He never, on that day, got any closer to that corner of the field than approximately 150 yards. He did not shoot the dog. "There is a difference in shooting and shooting at. I shot to turn the dogs off of me. I said I shot to turn the dogs off of me." At that time he was from 200 to 250 yards from the two men. The dogs were coming up beside the hedgerow from down in the southeast corner of the field. There were two "big old" dogs. He had never seen them before and did not know whose they were. He shot four times. "As to whether those dogs got anywhere near me, they were just about like from here to that deputy sheriff standing over there

and were coming right at me. That was as close as they got to me because I shot at them. I did not shoot right at them. I shot in front of them in the ground."

The court had placed in the record the following statement:

"In the instructions to the jury the court is not going to charge on the defendant's right to kill a dog in protecting himself, there being no evidence that the defendant was under attack, but rather, the only evidence is that the dogs were proceeding in his direction."

We agree with the court. There is no evidence in the record that the dogs, or either of them, were attacking defendant or even threatening to attack, or doing anything which would make a reasonable person think they were about to attack. Nor does defendant testify that he thought they were going to attack. There is absolutely no evidence that the dogs were ferocious or vicious or that either of them had ever caused any trouble whatever. The only evidence with respect to the nature of the dog which was killed was that he was gentle and had never bitten anyone. There is no evidence that the defendant thought the dog was vicious. He said he had never seen the dogs before and did not know to whom they belonged.

The court instructed the jury that the State would have to prove, beyond a reasonable doubt, that the defendant shot a dog belonging to the prosecuting witness; that, in so doing, the defendant acted willfully and needlessly; that "the shot, if any, proximately caused the dog's death"; and the jury would have to find all these elements before they could find the defendant guilty. Under the evidence in this case, defendant was not entitled to more.

No error.

Judges MARTIN and ARNOLD concur.