An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1012

Filed 17 September 2025

Guilford County, No. 22CRS352854

STATE OF NORTH CAROLINA

v.

JAVIER MALIK BLACKBURN

Appeal by defendant from judgment entered 31 January 2024 by Judge R. Allen Baddour, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 26 August 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General M. Lynne Weaver, for the State.*

> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Samuel J. Ervin, IV, for the defendant-appellant.*

TYSON, Judge.

Javier Malik Blackburn ("Defendant") appeals from judgments entered after a jury found him guilty of assault with a deadly weapon causing serious injury and robbery with a dangerous weapon. We discern no prejudicial error.

## I.  Background

Laquita Nixon ("Ms. Nixon") and Joshua James ("Mr. James") lived together in High Point on 29 November 2022. High Point Police Officers Paloio and Lashley were dispatched to the residence after request for emergency services regarding a shooting. Once the officers entered the residence, Officer Paloio began providing medical treatment for a gun shot in Mr. James's leg.

The officers found a scale and three bags of marijuana present inside the residence. Officer Paloio recovered five shell casings in the bedroom where Mr. James was lying. The Officers also found Ms. Nixon's dog cowering in another room with a gunshot wound graze on its leg. Finally, the Officers recovered a "trail of money" leading from the front door of the residence through the front yard.

Ms. Nixon told Officer Lashley she could identify Defendant. She pulled up Defendant's Facebook social media profile on Mr. James's phone. Based upon this information, the officers located Defendant and arrested him without incident later that night. Defendant was charged with felonious breaking and entering, assault with a deadly weapon with intent to kill inflicting serious injury, and common law robbery. Defendant was later indicted for the breaking and/or entering, assault as charged, and robbery with a dangerous weapon.

Ms. Nixon testified she was awakened by "yelling" and "cursing" the night of the shooting. Defendant and two other men entered the residence and stole money, clothes, and shoes. Defendant pointed a gun at Mr. James, and the two began to fight. This altercation ended with Mr. James on the floor and Defendant standing

above him.  Defendant fired and shot Mr. James in the leg.

Defendant testified and was the only witness in his defense.  He asserted he had never met Mr. James, but one of the other men present had messaged Mr. James *via* social media to arrange a drug deal.  The group went to Mr. James's residence to purchase marijuana with no intention of shooting or robbing Mr. James.  The three men paid for the marijuana, and Mr. James walked to the bedroom to get twenty dollars in change.  While Mr. James was in the bedroom, the dog jumped off the bed, which caused the two men to start firing their guns in fear and accidentally shoot Mr. James.  Defendant claimed he did not know the other two men were armed. Defendant denied any knowledge of the money recovered from the front lawn of the residence.

The jury convicted Defendant of the lesser-included crime of assault with a deadly weapon causing serious injury and robbery with a dangerous weapon. Defendant was sentenced as a Prior Record Level IV offender with ten points in the presumptive range to an active term of 90 to 120 months for the robbery with a dangerous weapon conviction and to a consecutive active term of 30 to 48 months in the presumptive range for the assault with a deadly weapon causing serious injury conviction. Defendant was credited with 284 days of pretrial confinement. Defendant appeals.

## II.    Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2023).

## III.    Issues

Defendant contends: (1) the trial court committed plain error by failing to *ex mero motu* issue a jury instruction on self-defense; (2) he received ineffective assistance of counsel because of his trial counsel's failure to request a self-defense jury instruction; and, (3) he is entitled to a new trial because the jury deliberated in the presence of the alternate.

## IV.    Self-Defense Instruction

Defendant contends the trial court committed plain error in failing to provide the jury with an instruction on self-defense.

### A. Standard of Review

Defendant failed to object to the jury instructions provided at trial. When a party fails to preserve this issue, this Court applies plain error review. N.C. R. App. P. 10(a)(4); *State v. Black*, 308 N.C. 736, 739-41, 303 S.E.2d 804, 805-07 (1983). Plain error is applied "cautiously and only in the exceptional case" to resolve issues that "seriously affect the fairness, integrity[,] or public reputation of judicial proceedings." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 379 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)).

To show plain error prejudice, a defendant must show the jury probably would have reached a different result had the purported error not occurred. *Id*. This Court "examine[s] the entire record" to determine the probability of a different verdict. *Id*. at 661, 300 S.E.2d at 379.

## B. Analysis

The long-standing common law right, as codified and modified by statute, permits a defendant to use and assert self-defense to excuse a defendant from killing or wounding another, if the defendant can show four elements existed simultaneously:

> (1) it appeared to defendant and he believed it to be necessary to kill [or wound] the deceased in order to save himself from death or great bodily harm; and
>
> (2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and
>
> (3) defendant was not the aggressor in bringing on the affray, *i.e.*, he did not aggressively and willingly enter into the fight without legal excuse or provocation; and
>
> (4) defendant did not use excessive force, *i.e.*, did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or bodily harm.

*State v. McLymore*, 380 N.C. 185, 190, 868 S.E.2d 67, 72 (2022) (quoting *State v. Norris*, 303 N.C. 526, 530, 279 S.E.2d 570, 572 (1981)).

N.C. Gen. Stat. § 14-51.3 (2023) provides:

> a person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if . . . [h]e or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another.

Section 14-51.4(1) precludes a defendant from claiming self-defense when they are

- 5 -

attempting to commit, committing, or escaping from the commission of a felony offense. N.C. Gen. Stat. § 14-51.4(1) (2023).

"Section 14-51.3 supplants the common law on all aspects of the law or self-defense addressed by its provisions." *McLymore*, 380 N.C. at 191, 868 S.E.2d at 72. Accordingly, "when a defendant in a criminal case claims perfect self-defense, the applicable provisions of [N.C. Gen. Stat.] § 14-51.3 – and, by extension, the disqualifications provided under [N.C. Gen. Stat.] § 14-51.4 – govern." *Id.* at 191, 868 S.E.2d at 73. Sections 14-51.3 and 14-51.4 supplant the common law where applicable, though the common law remains applicable where the legislature remains silent. *See id.*; N.C. Gen. Stat. § 4-1 (2023).

Defendant contends his right to self-defense arises not in the statutory right to self-defense in Section 14-51.3, but in the common law. *Id.* If Defendant is correct regarding the source of his right to self-defense against an animal, he is incorrect regarding his entitlement to a self-defense instruction under plain error review.

North Carolina's common law right to kill a dog in self-defense does not require a dog to "forfeit his life without any sufficient cause." *State v. Smith*, 156 N.C. 506, 509 72 S.E. 321, 322 (1911). "It is not the dog's predatory habits, nor his past transgressions, nor his reputation, however bad, but the doctrine of self-defense, whether of person or property, that gives the right to kill." *Id.* at 512, 72 S.E. at 324. Only when a defendant can prove "that the danger was imminent making it necessary

then and there to kill" is the common law doctrine of self-defense against a dog applicable. *Id*. at 509, 72 S.E. 322 (quoting *Morse v. Nixon*, 51 N.C. 293, 293 (1859)).

In *State v. Simmons*, the defendant requested a jury instruction on self-defense, testifying the dogs in question were "big old dogs" and were "coming right at [him]." *State v. Simmons*, 36 N.C. App. 354, 356-57, 244 S.E.2d 168, 169 (1978). The trial court refused to issue a self-defense instruction in the absence of evidence the defendant was "under attack." *Id*. at 357, 244 S.E.2d at 170. This Court upheld the trial court's refusal to so instruct, because "no evidence in the record [showed] the dogs, or either of them, were attacking defendant or even threatening to attack, or doing anything which would make a reasonable person think they were about to attack." *Id*. Further, no evidence the dogs "were ferocious or vicious or had ever caused any trouble whatever" was introduced. *Id*.

Defendant contends he was entitled to a jury instruction on self-defense on an evidentiary record strikingly similar to that in *Simmons*. Defendant testified Ms. Nixon's dog was "big" and it had "jumped off the bed." Defendant introduced no evidence of the dog's viciousness or ferociousness, and instead testified he "[didn't] know if the dog was going to attack us." As explained in *Simmons*, a large dog moving toward a defendant does not entitle the defendant to a self-defense instruction. *Id*.

Defendant next argues if Section 14-51.3 applies to his case, the felony preclusion in Section 14-51.4(1) does not bar his self-defense claim. N.C. Gen. Stat. §§ 14-51.3 and 14-51.4 (2023). Our precedents suggest otherwise. In *McLymore*, the

defendant testified he was in the passenger seat of his supervisor's vehicle when his supervisor "punched [him] in his jaw, grabbed him by the shirt, and pushed him against the door." *McLymore*, 380 N.C. at 187, 868 S.E.2d at 70. McLymore claimed he responded by closing his eyes and firing two shots at his assailant, killing him. *Id.* at 188-89, 868 S.E.2d at 70. He then fled the scene in the vehicle. *Id.* at 188, 868 S.E.2d at 70. He was found guilty of first-degree murder and robbery with a dangerous weapon for taking the vehicle. *Id.* at 188, 868 S.E.2d at 71.

McLymore claimed he was justified in his use of deadly force in self-defense. *Id.* The trial court informed the jury McLymore was precluded from claiming self-defense under N.C. Gen. Stat. § 14-51.4(1) because at the time of the killing, McLymore was committing the felony of being a felon in possession of a firearm. *Id.* On appeal, McLymore argued the felony preclusion of Section 14-51.4(1) should not be interpreted to *categorically* bar defendants with felony convictions from using firearms in self-defense. *Id.* Our Supreme Court agreed. *Id.* at 200, 868 S.E.2d at 78. The Court held Section 14-51.4(1) requires a defendant's felonious actions to be causally connected to the circumstance leading to the alleged defensive force for the defendant to be precluded from asserting self-defense. *Id.*

Our Supreme Court held the trial court had improperly instructed the jury by failing to inform the jury to consider whether a causal connection existed between McLymore's felonious action and the circumstances leading to shooting his supervisor. *Id.* at 198, 868 S.E.2d at 77. However, the Court held such an error was

not prejudicial because of McLymore's conviction for armed robbery. *Id.* Because the jury found McLymore had used a firearm to take his supervisor's vehicle, the jury necessarily would have found McLymore's attempt, commission, or escape from the armed robbery was causally connected to shooting his supervisor. *Id.* at 200, 868 S.E.2d at 78. Because McLymore was engaged in a felony at the time he used allegedly defensive force, he was necessarily precluded from claiming self-defense. *Id.*

The similarities between Defendant's and McLymore's situations are striking. Both were convicted of injuring (and in McLymore's case, killing) a victim. Both were also convicted of armed robbery stemming from the same circumstance as the shooting. Both defendants had engaged with their victims for relatively short periods of time, and both fled the scene shortly after the shooting. Just as McLymore's armed robbery was causally connected to his supervisor's murder, Defendant's armed robbery was causally connected to the assault of Mr. James. *Id.*

Defendant claims if the jury had been provided a self-defense instruction, the jury may have found Defendant's armed robbery was over at the time the dog jumped off the bed, but Defendant was not yet escaping from the commission of the armed robbery. Such a narrow interpretation of the evidence does not support a finding of plain error. We discern no plain error in the trial court's failure to provide a self-defense jury instruction. Defendant's arguments are overruled.

## V. Ineffective Assistance of Counsel

Defendant argues his trial counsel's failure to request a self-defense jury instruction represents ineffective assistance of counsel ("IAC").

## A. Standard of Review

In *Strickland v. Washington*, the United States Supreme Court set out a two-prong test a defendant must satisfy to show IAC:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 80 L.Ed.2d 674, 693 (1984).

"[T]he burden to show that counsel's performance fell short of the required standard is a heavy one for [a] defendant to bear." *State v. Fletcher*, 354 N.C. 455, 482, 555 S.E.2d 534, 551 (2001), *cert. denied*, 537 U.S. 846, 154 L.Ed.2d 73 (2002).

## B. Analysis

Because the trial court's failure to instruct on self-defense was not prejudicial, Defendant cannot show his counsel's failure to request such an instruction prejudiced his defense. *Id.* Defendant's argument is overruled.

## VI.   Jury Deliberation

Defendant contends the trial court violated his right to a unanimous verdict by twelve jurors by failing to ensure the jury did not deliberate in the presence of the

alternate.

## A. Standard of Review

"[T]he presence of an alternate in the jury room *during deliberations* violates N.C. [Gen. Stat.] § 15A-1215(a) and constitutes reversible error *per se*." *State v. Parker*, 350 N.C. 411, 426, 516 S.E.2d 106, 117 (1999). When "the alternate's presence in the jury room is inadvertent and momentary, and it occurs under circumstances from which it can be clearly seen or immediately determined that the jury has not begun its function," no reversible error exists. *State v. Bindyke*, 288 N.C. 608, 628, 220 S.E.2d 521, 534 (1975). "Jurors are presumed to have followed the trial court's instructions." *Parker*, 350 N.C. at 426, 516 S.E.2d at 117.

## B. Analysis

At the end of the day on Tuesday, 30 January 2024, the trial court instructed the jury:

> I just want to impress upon you just how important it is to take this seriously. . . I'm not saying y'all can't talk to each other, but don't talk about the case [with each other].

> Even if all twelve of you want to go to dinner tonight, don't talk about the case. I don't think that'll happen, but you need to be overseen, generally speaking, by the Court and only be deliberating when Court's in session

Court opened the next day at 9:31 a.m. and the jury, including the alternate, entered at 9:32 a.m. Defendant contends the jury may have deliberated in the presence of the alternate during this minute. However, no evidence indicates the

jury's failure to follow the court's instructions not to deliberate outside of court. Presuming the jurors followed the court's express instructions, Defendant's contention his right to a verdict by twelve jurors was violated is overruled. *Id.*; *Bindyke*, 288 N.C. at 627, 220 S.E.2d at 533.

## VII.    Conclusion

Defendant was not entitled to a self-defense jury instruction.  The trial court did not commit plain error in failing to issue one.  Defendant did not receive IAC because of counsel's failure to request a self-defense instruction to which he was not entitled.

Defendant's right to a verdict by twelve jurors was not violated as no deliberations had begun.  *Id.*   Defendant received a fair trial, free from plain or prejudicial errors he preserved and argued.  We discern no  error in the jury's verdicts or in the judgments entered thereon.  *It is so ordered.*

NO ERROR.

Judges HAMPSON and FLOOD concur.

Report per Rule 30(e).