STATE OF NORTH CAROLINA v. JOHNNY STREET PARKER

No. 152A97

(Filed 25 June 1999)

**1. Indigent Defendants— capital case—statutory right to two attorneys—jury deferments and excuses—absence of lead attorney**

Defendant's statutory right to representation by two attorneys in a capital trial was not violated when the trial court proceeded with limited jury orientation, jury excuses, and jury deferments without the presence of his lead counsel, who was ill, where the court proceeded with the consent of defendant and his second court-appointed attorney, and a third attorney who had been assisting defendant's two court-appointed attorneys in jury selection was present and still assisting. N.C.G.S. § 7A-450(b1).

**2. Crimes, Other— malicious castration—dead victim— continuous transaction with murder—sufficiency of evidence**

There was sufficient evidence to support submission of a charge of malicious castration to the jury, even though the medical examiner testified that the victim was dead at the time of the castration, where the evidence was sufficient to show that the crime of malicious castration was committed in conjunction with the victim's murder as part of a continuous chain of events forming one single transaction.

**3. Burglary— indictment—intended felony**

An indictment for first-degree burglary was not required to specify the felony which defendant intended to commit at the time of the breaking or entering.

**4. Burglary— first-degree burglary—constructive breaking— intent to commit felonious assault—sufficiency of evidence**

The evidence was sufficient to support submission of a charge of first-degree burglary to the jury where the trial court instructed the jury that the felonious intent alleged was "felonious assault with a deadly weapon inflicting serious injury," and the jury could draw inferences from the evidence that the victim

STATE v. PARKER

[350 N.C. 411 (1999)]

could testify about defendant's involvement in a burglary and murder in a downstairs apartment, that the victim was forced through violence and the threat of violence back into his upstairs apartment before being killed by defendant, and that defendant intended at the time he entered the victim's apartment to commit a felonious assault on the victim.

**5. Criminal Law— mistrial—selection of jury foreperson— presence of alternate jurors**

The trial court did not err by denying defendant's motion for a mistrial because the jury first selected a foreperson before the alternate jurors were excluded from the jury room where no deliberations or any conversation regarding the facts of the case occurred while the alternate jurors were present. N.C.G.S. § 15A-1215(a).

**6. Burglary— felony murder—underlying felony—felonious intent—assault as felony—instructions not plain error**

The trial court did not commit plain error in a prosecution for felony murder in its instructions on the felonious intent element of the underlying felony of burglary, although there may have been some initial confusion in the trial court's instructions, where the court ultimately set forth the required elements that the jury needed to find to properly determine whether the assault defendant intended to commit at the time he broke and entered the victim's apartment was in fact a felony.

**7. Robbery— instructions—taking by violence or putting in fear—supporting evidence**

In a felony murder prosecution based upon the underlying felony of armed robbery, the trial court's instruction that taking of property in an armed robbery could be accomplished "by violence or by putting [the victim] in fear" did not erroneously allow the jury to convict defendant upon a theory not supported by the evidence where the evidence showed not only that the taking of property was accomplished by violence but also that the victim was awake with his eyes open when a gun was pointed at his face and fired below his right eye, thus permitting the jury to find that defendant threatened the use of the gun when he pointed it at the victim's face and that the victim was in some fear as he realized the gun was aimed at his face.

**8. Criminal Law— prosecutor's closing argument—not shifting of burden of proof**

The prosecutor's argument to the jury in a prosecution for two first-degree murders, "Get him to show you the evidence says those weren't his fingerprints. And, that he wasn't at 203 Northeast Street in the early morning hours of the 2nd of October, 1994," and "Get them to show the evidence that he didn't have anything [sic] with the murders" did not shift the burden of proof to defendant; rather, when considered in the overall context in which the remarks were made and the overall factual circumstances to which they referred, they constituted comments on the strength of the State's evidence and the absence of any contradictory evidence.

**9. Evidence— identification of defendant—brief opportunity for observation**

The trial court properly permitted identification of defendant by a witness who observed defendant during the day from a short distance for a period of a few seconds to a minute and was able to remark about defendant's unseasonable clothing. The witness's limited opportunity for observation goes to the weight rather than the admissibility of the identification.

**10. Confessions and Incriminating Statements— statements not made under influence of drugs—statements not result of interrogation**

Incriminating statements made by defendant to law officers after his arrest at a detox center were not made while defendant was under the influence of drugs and were properly admitted into evidence at defendant's murder trial where the evidence supported findings by the trial court that defendant was not handcuffed, spoke clearly and coherently, understood questions, made appropriate responses, and that the incriminating statements were not made in response to interrogation by the officers but were entirely voluntary. These findings support the trial court's conclusion that defendant's statements were made freely, voluntarily, and understandingly.

**11. Sentencing— capital sentencing—aggravating circumstance—pecuniary gain—sufficient evidence**

The trial court properly submitted the pecuniary gain aggravating circumstance to the jury in this capital sentencing proceeding, although there was evidence that defendant told his

cousin that he broke into the victim's apartment to steal a gun for his own protection, where there was substantial evidence to support an inference by the jury that defendant's motive in stealing the gun was to exchange it or sell it for drugs. Moreover, the fact that defendant may have intended to steal the gun for his personal use does not change the fact that the killing was committed for the purpose of getting something of value, which is sufficient to support the pecuniary gain aggravating circumstance. N.C.G.S. § 15A-2000(e)(6).

**12. Sentencing— capital sentencing—mitigating circumstance—no significant history of criminal activity—supporting evidence**

The trial court did not err by submitting over defendant's objection the mitigating circumstance that defendant had no significant history of prior criminal activity where the evidence tended to show that defendant began drinking alcohol as a child and started using marijuana and cocaine when he was thirteen years old; a couple of years later, defendant was committing break-ins to support his drug habit and was hospitalized for treatment of substance abuse; a forensic psychiatrist testified that defendant was frequently violent; and at age eighteen, defendant was sent to juvenile detention. The trial court could properly determine that a reasonable juror could find that defendant had no significant history of prior criminal activity within the meaning of N.C.G.S. § 15A-2000(f)(1).

**13. Sentencing— capital sentencing—mitigating circumstance—no significant history of criminal activity—submission over objection—prosecutor's argument—instruction by court**

In a capital sentencing proceeding in which the trial court submitted the (f)(1) no significant history of prior criminal activity mitigating circumstance to the jury over defendant's objection, the prosecutor's arguments were not misleading as to whether defendant requested submission of the (f)(1) mitigating circumstance; furthermore, the trial court properly instructed the jury that defendant did not request submission of the (f)(1) mitigating circumstance, and the trial court's failure to inform the jury that submission of this mitigating circumstance was required as a matter of law was harmless when the instructions are viewed in their totality.

**14. Criminal Law— prosecutor's closing argument—capital sentencing—rights given defendant—not due process violation**

Assuming arguendo that it was improper for the prosecutor to argue to the jury in a capital sentencing proceeding that defendant "has been given food to eat and a warm place to stay. Health care, lawyers, social workers, psychiatrist," that the victims did not have a five-week trial or two lawyers to plead their cases, and that the victims had a jury of one to decide their fate and didn't get a hearing, these statements did not deny defendant due process since the prosecutor did not directly attack defendant's exercise of his constitutional rights, substantial evidence supported the aggravating circumstances submitted to the jury, the jury was instructed to base its decision on the evidence alone and not on the arguments of counsel, and it is unlikely that the jury's recommendations were influenced by these portions of the prosecutor's closing argument.

**15. Sentencing— capital sentencing—life sentences—consecutive or concurrent—refusal to answer jury's question**

In a capital sentencing proceeding for two first-degree murders, the trial court did not err by instructing the jury, in response to the jury's inquiry as to whether two life sentences would be served consecutively or concurrently, that it was the court's job to make that determination and that the court was "not allowed to tell you what I'm going to do because that should not influence your—verdict."

**16. Sentencing— capital sentencing—aggravating circumstances—murder while engaged in second murder—course of conduct—separate evidence—instructions**

In this capital sentencing proceeding for two first-degree murders, there was substantial separate evidence to support the (e)(5) aggravating circumstance that the first victim's murder was committed while defendant was engaged in the commission of the second victim's murder and the (e)(11) aggravating circumstance that the first victim's murder was committed while defendant was engaged in a course of conduct which included the commission of the crime of malicious castration of the second victim where the evidence showed that defendant committed a series of crimes as part of a continuous transaction. Furthermore, there was no reasonable likelihood that the trial

court's instructions would have caused jurors to consider the murder of the second victim to support both aggravating circumstances where the trial court's instructions correctly informed the jury that the only violent crime which could be considered to support the (e)(11) aggravating circumstance was the second victim's castration, and the wording of the circumstance on the "Issues and Recommendation as to Punishment" form further clarified the instruction.

**17. Sentencing— capital sentencing—aggravating circumstance—course of conduct—castration of second victim—single transaction**

The trial court did not err in submitting the (e)(11) aggravating circumstance that the murder of Buchanan was part of a course of conduct which included the commission by defendant of another crime of violence (castration of Dowdy) where there was sufficient evidence that the crime of malicious castration was committed in conjunction with Dowdy's murder as part of a continuous chain of events which included Buchanan's murder and was thus a violent felony committed against Dowdy as part of a course of conduct including the murder of Buchanan.

**18. Appeal and Error— preservation of issues—submission of aggravating circumstance—failure to object or contend plain error**

Defendant waived appellate review of the issue as to whether the trial court erred by submitting to the jury the aggravating circumstance that the murder of one victim was committed while defendant was engaged in flight after committing another homicide, N.C.G.S. § 15A-2000(e)(5), where defendant failed to object to the trial court's instructions at the time they were given or before the jury retired to deliberate, and defendant failed to specifically and distinctly contend that the trial court's submission of the (e)(5) aggravating circumstance was plain error.

**19. Sentencing— capital sentencing—aggravating circumstance—murder while engaged in arson—continuous transaction**

The trial court did not err by submitting to the jury as an aggravating circumstance that the murder of Dowdy was committed by defendant while defendant was engaged in the commission of arson, N.C.G.S. § 15A-2000(e)(5), although there was

no evidence that there was any burning of Dowdy's upstairs apartment, where defendant killed both Buchanan in his downstairs apartment and Dowdy and set fire to the downstairs apartment, and the murder of Dowdy and the arson occurred under a short span of time and were parts of a continuous transaction.

**20. Criminal Law— prosecutor's closing argument—aggravating circumstances—existence found by verdicts—no gross impropriety**

The prosecutor's closing argument in a capital sentencing proceeding that, with regard to many of the aggravating circumstances, the jurors had already found them to exist by their verdicts did not encourage the jurors to engage in impermissible double counting and was not so grossly improper as to require the trial court to intervene ex mero motu where none of defendant's convictions from the guilt phase that were used to support either of defendant's convictions of first-degree murder were used as aggravating circumstances for the same murder in the sentencing phase.

**21. Sentencing— capital sentencing—death sentences not disproportionate**

Sentences of death imposed upon defendant for two first-degree murders were not excessive or disproportionate where (1) defendant was convicted of first-degree murder of one victim (Dowdy) under the theory of premeditation and deliberation; (2) defendant shot the second victim (Buchanan) in the face at close range; (3) defendant showed no remorse for the brutal murder and castration of Dowdy; and (4) defendant murdered both victims in their homes.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing sentences of death entered by Lanier (Russell J., Jr.), J., on 13 March 1997 in Superior Court, Sampson County, upon jury verdicts finding defendant guilty of two counts of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments was allowed 21 January 1998. Heard in the Supreme Court 12 January 1999.

*Michael F. Easley, Attorney General, by William P. Hart, Special Deputy Attorney General, for the State.*

*James R. Parish for defendant-appellant.*

FRYE, Justice.

In a capital trial, defendant was convicted by a jury of first-degree murder of James William Buchanan under the theory of felony murder. The same jury convicted defendant of first-degree murder of Jerry Lee Dowdy under the theories of felony murder and premeditation and deliberation. The jury also found defendant guilty of malicious castration, first-degree burglary of a home and larceny of a firearm therefrom, first-degree arson, breaking or entering a motor vehicle, first-degree burglary of an apartment, felonious breaking or entering of a house, breaking or entering of a storage building, felonious breaking or entering of a storage building and felonious larceny therefrom, and breaking or entering of a motor vehicle and misdemeanor larceny therefrom.

In a capital sentencing proceeding conducted pursuant to N.C.G.S. § 15A-2000, the jury recommended and the trial court imposed a sentence of death as to each murder. The trial court arrested judgment on the larceny of a firearm conviction and continued prayer for judgment on two counts of breaking or entering and one count of misdemeanor larceny. Consecutive terms of imprisonment were imposed for the remaining convictions.

Defendant makes twenty-nine arguments on appeal to this Court. For the reasons discussed herein, we conclude that defendant's trial and capital sentencing proceeding were free of prejudicial error and that the death sentences are not disproportionate. Accordingly, we uphold defendant's convictions and sentences.

The State's evidence presented at trial tended to show the following facts and circumstances: On the morning of 2 October 1994, John Williams noticed smoke coming from a house located at 201 Northeast Street in the town of Roseboro. He drove to the police department to report the smoke. Billy Herring, the chief of the Roseboro Fire Department, received the fire call around 7:25 a.m. and went to the house at 201 Northeast Street. James William Buchanan, also known as "Alabama," lived in the downstairs portion of the house, and Jerry Lee Dowdy lived in an upstairs apartment. Herring pushed the downstairs door open. A fireman, Keith Sessoms, observed testicles lying in the doorway to the downstairs area.

Officers found the lifeless body of James Buchanan, a fifty-two-year-old businessman and Roseboro town commissioner, on his bed

in the bedroom of the downstairs apartment. He had been shot in the face and burned. The cloth covering on the bed had been burned, with only the springs remaining. In the bedroom, dresser drawers were open with everything pulled out of them; on the floor, there was a broken television, clothes, a pink Bic-style cigarette lighter, a burned lighter-fluid can, and a nine-millimeter shell casing. There was heavy fire damage in the bedroom, on and around the bed.

Officers found the lifeless body of Jerry Dowdy, a fifty-year-old groundskeeper at the Hardee's Restaurant in Roseboro, lying face-down in a large puddle of blood in the kitchen of his upstairs apartment. Spatters of blood were apparent on the kitchen table, the lower portion of the stove and the sink cabinets, the walls, the floor, the side of the refrigerator, and extending into the hallway. Dowdy was naked from the waist down, with underwear around his legs. His testicles had been removed, and there were multiple chopping wounds to his head and hands. Officers found an empty wallet under his left elbow, blood and hair on an ax propped against a cabinet under the sink, and a bloody knife on the kitchen floor.

Betty Edwards lived nearby at 208 Railroad Street in Roseboro. On 2 October 1994, she noticed that several items, including a battery charger, an electric heater, a gas edger, a toolbox, and a black case with tools in it, had been removed from her storage building. Ms. Edwards' son's 1991 Nissan Stanza had also been entered, and papers had been scattered around in the car.

James Jackson lived at 203 Northeast Street in Roseboro, next door to Buchanan's home. He testified that, on 2 October 1994, when he arrived home, there was security tape around his residence. The phone lines had been cut, a storm window under the garage had been removed, and the padlock had been pried from the door of a storage building. Nothing had been taken from the residence.

Between 10:00 p.m. on Saturday, 1 October 1994 and 4:00 a.m. on Sunday, 2 October 1994, several people saw defendant in Roseboro. Defendant was wearing a multiple-color, splashed shirt under a dark-green, long-sleeve pullover shirt with black stripes and no collar, and a pair of gray stone-washed jeans with a tear in the right knee and a splash of orange paint on one leg. By 9:00 a.m. on Sunday, 2 October 1994, defendant had on a pair of gray dress pants, instead of the gray stone-washed jeans, and a pair of black and white Asics tennis shoes.

A tennis-shoe impression in blood on a newspaper found in the hallway of Dowdy's upstairs apartment was an exact match in design and size to an impression from the Asics tennis shoe defendant was wearing when he arrived at his cousin's house at 9:00 a.m. on 2 October 1994. When seized on 6 October 1994, it was determined that the tennis shoes had human blood on them.

Defendant's cousin, Mitchell Parker, testified as follows: On the night of 2 October 1994, defendant told Mitchell that he knew there was a gun at Buchanan's house and that he had gone there to steal it. Defendant said that as he was stealing the gun, Buchanan woke up and grabbed him from behind. He said he shot Buchanan in the head to get him off of him. Then Dowdy woke up and came downstairs, and a fight ensued. Defendant said that he "busted" Dowdy's head. Defendant said that he decided to burn the house and that he changed clothes, cut some phone lines at a nearby house, and took a lawnmower. Defendant also told Mitchell that, earlier that day, he smoked some marijuana, drank some beer, and injected cocaine several times.

At 5:00 a.m. on the morning of 3 October 1994, defendant's family tried to have him committed to the mental health department because they thought he was hallucinating from drugs. Later that day, defendant was committed and sent to Onslow Detox Center. By that time, defendant was calm and cooperative, oriented to the surroundings, and understood what was said and what was occurring.

Defendant stayed at the detox center for two days. On Wednesday, 5 October 1994, defendant was arrested at the detox center for the murders of Buchanan and Dowdy. At the police station, defendant told the officers that he had gone to a house near Buchanan's on 2 October 1994 and had stolen a lawnmower and a battery charger from the shed. He had also stolen a cellular phone from Buchanan's car. He denied going into Buchanan's house. Then the officers told defendant that his cousin had told them that defendant had admitted killing Buchanan, and defendant put his head down, cried, and asked for a lawyer. Following his request, the interrogation ended. Defendant was handcuffed and taken to the police car. Once outside, defendant asked one of the officers how serious everything was, to which the officer replied, "It's real bad." Defendant replied, "I didn't mean to kill Alabama [Buchanan]." Defendant then began crying.

Defendant did not testify during the trial. He did call several witnesses.

## I. PRETRIAL

[1] In his first argument, defendant contends that the trial court erred by proceeding with the orientation of new jurors along with requests for deferments and excuses in the absence of defendant's lead counsel, who was ill. Defendant contends that the trial court violated his rights as an indigent defendant, under N.C.G.S. § 7A-450, to have two attorneys representing him. We disagree.

John Parker (no relation to defendant) was appointed as counsel to represent defendant, and Isaac Cortes, Jr., was appointed as co-counsel. Lead counsel, Parker, became ill and was absent during several court proceedings. During Parker's absence, the trial court proceeded with administrative matters. A third attorney, who had been present and participating with defendant's court-appointed attorneys throughout jury selection, was present during these proceedings.

Every criminal defendant is entitled to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984). An indigent defendant is entitled to two attorneys in a capital case. N.C.G.S. § 7A-450(b1) (1995). Failure to appoint additional counsel in a capital case in a timely manner is a violation of the statute, which is prejudicial error *per se. State v. Hucks*, 323 N.C. 574, 581, 374 S.E.2d 240, 245 (1988). In the instant case, defendant has not claimed that additional counsel was not appointed in a timely manner. Instead, defendant claims that the actions of the trial court in proceeding with limited jury orientation, jury excuses, and jury deferments without the presence of his lead counsel violated his right to the appointment and presence of two counsel. However, the statute does not require that both appointed attorneys be involved in every aspect of a defendant's case.

In *State v. Frye*, 341 N.C. 470, 461 S.E.2d 664 (1995), *cert. denied*, 517 U.S. 1123, 134 L. Ed. 2d 526 (1996), this Court concluded that the trial court did not violate the defendant's statutory right to two counsel by not allowing both attorneys to object during *voir dire*. This Court held that since the trial court "did not deny defendant the assistance of a second attorney or so drastically circumscribe the second attorney's role as to render the appointment of two attorneys

meaningless," there was no violation of the statute. *Id.* at 493, 461 S.E.2d at 675.

In the instant case, the trial judge asked defendant's other counsel and defendant if they had a problem proceeding with orientation of the jurors and hearing requests for deferments and excuses; defendant's counsel did not object to such proceedings. The dialogue proceeded as follows:

> THE COURT: It has been brought to the Court's attention by telephone that the lead counsel for the defendant Mr. John Parker is ill and that he is unable to proceed today and probably not tomorrow. However, we do have a new panel of juror[s] coming in tomorrow that it would facilitate matters if we could do the orientation and hear the requests for deferments and excuses in Mr. Parker's absence. What I'd like to inquire about of Mr. Cortes, and Fusco and Parker, your client, if you have any problem with doing that?

> MR. CORTES: No, sir. That seems to me to be some what more of an administrative than actual jury selection and therefore more in the hands of the Court and we do not oppose or object to that proceeding.

> THE COURT: All right. Well, we will begin tomorrow morning doing that and that alone at 9:00. That's what [sic] the folks have been told to come.

The actions of the trial court in this case did not violate defendant's rights under the statute. Defendant had two court-appointed attorneys as required under N.C.G.S. § 7A-450(b1). The trial court was confronted with the illness of defendant's lead counsel and the fact that jurors had been summoned to court. In continuing the proceedings with the consent of defendant and with defendant and one of his court-appointed attorneys present, the trial court did not violate the right of defendant to have two attorneys appointed in his capital case. *See State v. Thomas*, 350 N.C. 315, 337, —— S.E.2d ——, —— (1999). This is especially true where, as here, a third attorney, who had been assisting defendant's two court-appointed attorneys in jury selection, was present and still assisting. The trial court "did not deny defendant the assistance of a second attorney or so drastically circumscribe the second attorney's role as to render the appointment of two attorneys meaningless." *Frye*, 341 N.C. at 493, 461 S.E.2d at 675.

The State contends, and we agree, that defendant's statutory right to representation by two attorneys was not violated by the actions of

the trial court in the instant case. Accordingly, we reject defendant's first argument.

## II. GUILT PHASE

[2] In his second argument, defendant contends that the trial court erred in failing to dismiss the charge of malicious castration of Jerry Lee Dowdy at the close of all the evidence because there was insufficient evidence to support submission of this charge. The evidence showed that Sessoms, one of the firemen at the scene of the crime, saw testicles in the downstairs doorway. Dowdy was found dead upstairs in his apartment. According to the medical examiner, Dowdy's testicles had been cut off after death. Defendant does not contend that he did not commit the acts necessary to constitute malicious castration. Instead, he contends that, since Dowdy was dead at the time of the castration and the gravamen of the offense appears to prohibit these acts being done to a living person, the evidence was insufficient to support submission of this charge.

The State, on the other hand, contends that if a series of assaultive crimes against a person who has been murdered occurred in a continuous transaction, the exact time of the assaultive felony in relation to the death of the victim is irrelevant. *See State v. Wilkinson*, 344 N.C. 198, 214-17, 474 S.E.2d 375, 385 (1996). We agree with the State.

In *Wilkinson*, this Court concluded that there was sufficient evidence that the two sex offenses to which the defendant pled guilty were committed as part of a continuous chain of events with the murder forming one continuous transaction. *Id.* The Court in *Wilkinson* relied on *State v. Thomas*, 329 N.C. 423, 407 S.E.2d 141 (1991), in which we stated:

"Because the sexual act was committed during a continuous transaction that began when the victim was alive, we conclude the evidence was sufficient to support defendant's conviction for first-degree sexual offense. This Court, on numerous occasions, has held that to support convictions for a felony offense and related felony murder, all that is required is that the elements of the underlying offense and the murder occur in a time frame that can be perceived as a single transaction."

*Wilkinson*, 344 N.C. at 215-16, 474 S.E.2d at 384 (quoting *Thomas*, 329 N.C. at 434-35, 407 S.E.2d at 149); *see also State v. Davis*, 325 N.C.

607, 631, 386 S.E.2d 418, 431 (1989) (stating that a homicide victim is still a "person" if the death and the taking form a continuous chain of events within the meaning of common-law robbery), *cert. denied*, 496 U.S. 905, 110 L. Ed. 2d 268 (1990); *State v. Fields*, 315 N.C. 191, 203, 337 S.E.2d 518, 525 (1985) (holding that when the theft and the use or threat of force are connected so as to form a single transaction, the intent to steal could be formulated before or after the use of force); *State v. Williams*, 308 N.C. 47, 67, 301 S.E.2d 335, 348 (stating that whether the felony occurred prior to or immediately after the killing is immaterial so long as it is a part of a series of incidents which form one continuous transaction), *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983).

In the instant case, defendant's cousin testified that defendant told him that Dowdy came downstairs after defendant shot Buchanan in the head. Dowdy and defendant started to fight, and defendant "busted" Dowdy's head with a claw hammer. Dowdy was found lying facedown, naked from the waist down, testicles removed, with his underwear cut and pulled down his legs, in a large puddle of blood in the kitchen of his upstairs apartment. Blood spatters were found throughout the kitchen. The fact that defendant's testicles were removed postmortem is insufficient to remove it from our continuous transaction line of cases. Accordingly, we hold that the evidence is sufficient to show that the crime of malicious castration was committed in conjunction with Dowdy's murder as part of a continuous chain of events, forming one single transaction. Contrary to defendant's arguments, the trial court did not err in failing to dismiss the charge of malicious castration at the close of all the evidence.

[3] As defendant's third argument, he contends that the trial court erred in failing to dismiss, at the close of all the evidence, the charge of first-degree burglary of the apartment of Dowdy, as the indictment was insufficient to allege burglary, and the evidence was insufficient to support submission of this charge to the jury. While the indictment alleged that defendant broke and entered the apartment "with the intent to commit a felony therein," it did not specify a particular felony.

This Court determined in *State v. Worsley*, 336 N.C. 268, 280-81, 443 S.E.2d 68, 74 (1994), that an indictment for the charge of burglary need not specify the felony the defendant intended to commit at the time of the breaking or entering if " '[t]he indictment charges the offense . . . in a plain, intelligible, and explicit manner and contains

sufficient allegations to enable the trial court to proceed to judgment and to bar a subsequent prosecution for the same offense,' " and it " 'informs the defendant of the charge against him with sufficient certainty to enable him to prepare his defense.' " *Id.* at 281, 443 S.E.2d at 74 (quoting *State v. Freeman*, 314 N.C. 432, 436, 333 S.E.2d 743, 746 (1985)); *see also* N.C.G.S. § 15A-924(a)(5) (1997). Similarly, in the present case, the indictment for first-degree burglary need not specify the felony which defendant intended to commit.

[4] During the instructions to the jury on the burglary count, the court informed the jury that the felonious intent alleged was "felonious assault with a deadly weapon inflicting serious injury." Accordingly, the State had the burden of proving by substantial evidence that, at the time of the breaking or entering, defendant had that specific felonious intent.

First-degree burglary is the breaking or entering of an occupied dwelling at night with intent to commit a felony therein. N.C.G.S. § 14-51 (1993); *State v. Montgomery*, 341 N.C. 553, 566, 461 S.E.2d 732, 739 (1995). A breaking may be actual or constructive. *State v. Wilson*, 289 N.C. 531, 539, 223 S.E.2d 311, 316 (1976). A constructive breaking occurs when entrance is obtained as the result of violence commenced or threatened by a defendant. *Williams*, 308 N.C. at 362, 302 S.E.2d at 441. At the time of entrance, the intent to commit the felony must be present, and "this can but need not be inferred from the defendant's subsequent actions." *Montgomery*, 341 N.C. at 566, 461 S.E.2d at 739; *see also State v. Peacock*, 313 N.C. 554, 559, 330 S.E.2d 190, 193 (1985).

Here, defendant told his cousin that he went to Buchanan's house to steal a gun. Defendant did not tell his cousin where he was when he first hit Dowdy or how Dowdy got back upstairs. In Dowdy's upstairs apartment, there was blood spatter in the kitchen, a bloody tennis shoe print on a newspaper in the hallway, bloodstains in the bathroom, and bloodstains on the floor of the living room and in the hallway leading into the bedroom where closet doors were open and drawers were pulled out. There was no trail of bloodstains or blood spatter on the stairs and none downstairs. The jury could draw the clear inference that Dowdy was forced through violence and the threat of violence back into his upstairs apartment before being killed by defendant. The jury could further infer that defendant intended at the time he entered Dowdy's apartment to commit a felonious assault on Dowdy, who could testify about defendant's involve-

ment in the burglary and murder in the downstairs apartment. Accordingly, we hold that the trial court did not err in submitting the charge of first-degree burglary to the jury.

**[5]** In his fourth argument, defendant contends that the trial court committed reversible error in denying defendant's motion for mistrial based upon the allegation that the twelve jurors and the alternate jurors deliberated in the jury room and selected a foreperson prior to the alternates being excluded from the jury room. Defendant contends that his rights were violated under the North Carolina Constitution, Article I, Section 24, and N.C.G.S. § 15A-1215(a). This assignment of error has no merit.

It is well settled in North Carolina that the presence of an alternate in the jury room *during deliberations* violates N.C.G.S. § 15A-1215(a) and constitutes reversible error *per se. See* N.C.G.S. § 15A-1215(a) (1997); *State v. Bindyke*, 288 N.C. 608, 627, 220 S.E.2d 521, 533 (1975). On the other hand, "where the alternate's presence in the jury room is inadvertent and momentary, and it occurs under circumstances from which it can be clearly seen or immediately determined that the jury has not begun its function," the alternate's presence will not void the trial. *Bindyke*, 288 N.C. at 628, 220 S.E.2d at 533-34.

Here, the trial court gave the jury its instructions near the end of a day's session and told the jurors that the first thing that they would do the next day would be to choose a foreperson. The next day, when the trial court instructed them to select a foreperson, the jurors informed the court that they had already selected one. After the trial court sent the twelve into the jury room to begin deliberations and excused the alternates, defendant moved for a mistrial. The trial court denied defendant's motion and then brought the jury back into the courtroom to inquire whether the jury began its deliberation in the alternate jurors' presence. In response to the court's question, the jurors told the court that no deliberations or any other conversation transpired regarding facts of this case. Subsequently, the trial court instructed them to select a foreperson again and to begin deliberations thereafter. The jurors are presumed to have followed the trial court's instructions. *See State v. Williams*, 350 N.C. 1, 24, 510 S.E.2d 626, 641 (1999). Since the alternate jurors were not present during deliberations, there is no prejudicial error.

**[6]** In his fifth argument, defendant contends that the trial court committed reversible error by giving the jury misleading and inaccurate

instructions on the felonious intent element of burglary during its instructions on the underlying felonies for felony murder. Defendant contends that by misinstructing the jury as to felonious assault with a deadly weapon inflicting serious injury, the trial court omitted one of the necessary elements of the offense of burglary, thereby relieving the State of its burden of proof in violation of defendant's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 19, 23, and 27 of the North Carolina Constitution.

Here, the court instructed the jury that under first-degree felony murder, the State had to prove that the killing of a human being was done in the perpetration of, or attempt to perpetrate, a felony. During the instruction on the underlying felony of burglary, confusion arose as to which felony defendant was alleged to have intended to commit when he broke and entered Dowdy's apartment. The District Attorney called the error to the court's attention and a bench conference was held to clear up the confusion. The trial court then instructed the jury on the elements of felonious assault with a deadly weapon inflicting serious injury, the felony which defendant was alleged to have intended to commit when he broke and entered Dowdy's apartment.

Because defendant's counsel did not object to this instruction at the time it was given or before the jury retired to deliberate, this issue is not properly preserved for appellate review. *See* N.C. R. App. P. 10(b)(2); *State v. Allen,* 339 N.C. 545, 554-56, 453 S.E.2d 150, 154-55 (1995), *overruled on other grounds by State v. Gaines,* 345 N.C. 647, 483 S.E.2d 396, *cert. denied,* —— U.S. ——, 139 L. Ed. 2d 177 (1997). Therefore, defendant is entitled to relief only if the instructions amounted to plain error, which is error "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *State v. Bagley,* 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied,* 485 U.S. 1036, 99 L. Ed. 2d 912 (1988), *quoted in State v. Davis,* 349 N.C. 1, 34, 506 S.E.2d 455, 473 (1998), *cert. denied,* —— U.S. ——, —— L. Ed. 2d ——, 1999 WL 148333 (June 7, 1999). However, we conclude that while there may have been some initial confusion in the trial court's instruction, the court ultimately set forth the required elements that the jury needed to find to properly determine whether the assault defendant intended to commit at the time he broke and entered Dowdy's apartment was in fact a felony. Defendant has not shown that the jury was misled by the instructions or that the trial

court committed error so fundamental as to result in a miscarriage of justice. Thus, defendant has not shown plain error.

[7] In his sixth argument, defendant contends that the trial court improperly instructed the jury on the charge of felony murder as it relates to the underlying offense of robbery with a dangerous weapon. In its instruction to the jury, the trial court defined robbery as the "taking and carrying away of personal property of another from [his] person or in [his] presence without his consent by violence or by putting him in fear and with the intent to deprive him of its use permanently, the taker knowing he was not entitled to take it." Defendant challenges that portion of the instruction which tells the jury that the taking of the property could be accomplished "by violence or by putting him in fear." Defendant argues that since all of the State's evidence shows that the taking of the property was accomplished by violence rather than by putting the victim in fear, only one of the two theories is supported by evidence. Thus, defendant argues, the jury instruction erroneously allowed the jury to convict defendant upon a theory not supported by the evidence.

Here, the State's evidence showed that Buchanan awoke and grabbed defendant and that Buchanan was awake with his eyes open when the gun was pointed at his face and fired below his right eye. We agree with the State that the jury was entitled to find that defendant threatened the use of the gun when he pointed it at Buchanan's face and that Buchanan was in some fear as he realized the gun was aimed at his face. Accordingly, the evidence was sufficient to permit the jury to convict defendant in accord with the jury instructions.

Defendant's seventh argument is based upon three assignments of error. Defendant contends that the indictments charging defendant with two counts of first-degree burglary and one count of second-degree burglary were insufficient because they failed to specify the felony defendant intended to commit when he allegedly broke and entered the premises. Defendant recognizes that this Court, in *Worsley*, 336 N.C. at 280, 443 S.E.2d at 74, concluded that an indictment for first-degree burglary that satisfies the requirements of N.C.G.S. § 15A-924(a)(5) is sufficient even though it does not specify the felony that the defendant intended to commit when entering the dwelling house. Nevertheless, defendant asks this Court to review our *Worsley* opinion in light of "the difficulties that opinion has created."

Earlier in this opinion, we determined that the indictment here meets the requirements of N.C.G.S. § 15A-924(a)(5) as articulated in *Worsley*. Moreover, a defendant may move for a bill of particulars pursuant to N.C.G.S. § 15A-925 by requesting items of factual information pertaining to a charge but not recited in the pleading and by alleging that such information is necessary to adequate preparation or the conduct of the defense. *See Worsley*, 336 N.C. at 281, 443 S.E.2d at 74; *see also* N.C.G.S. § 15A-925 (1997). Here, defendant failed to file a motion for a bill of particulars pursuant to N.C.G.S. § 15A-925, nor did defendant file a motion to dismiss or otherwise object to the indictments before the trial court. Accordingly, we decline to reconsider our decision in *Worsley*.

Defendant further contends that there was insufficient evidence to submit the burglary charges to the jury. While including these contentions in his argument headings in his brief, defendant fails to present any argument or cases in support of these assignments of error. Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure provides that assignments of error in support of which no reason or argument is stated or authority cited are deemed abandoned. *See* N.C. R. App. P. 28(b)(5); *see also State v. Call*, 349 N.C. 382, 416, 508 S.E.2d 496, 519 (1998). Therefore, defendant has abandoned the issue of whether there was insufficient evidence to submit the burglary charges to the jury. With regard to issues in the portion of the three assignments of error properly before the Court, we hold that the trial court did not err. Thus, we reject defendant's argument.

In his eighth argument, based upon two assignments of error, defendant contends that the trial court committed reversible error in the burglary cases by instructing the jury as to the specific felonies the State contended defendant intended to commit at the time he broke and entered the two apartments. Defendant contends that it was error to give the instructions as to the specific felonies because the indictments failed to allege the specific felonies.

In support of this argument, defendant cites several earlier cases, but acknowledges that the law may have changed with this Court's interpretation in *Worsley*. We agree. Accordingly, we reject defendant's eighth argument.

[8] In defendant's ninth argument, he contends that the trial court erred in allowing the prosecutor to argue, over objection, that the burden of proof was on defendant and in not correcting this mistake

despite defendant's objection. Defendant contends that during closing arguments for the guilt phase, the prosecutor's argument placed the burden upon defendant to prove his innocence.

The challenged portion of the guilt-phase closing arguments is as follows:

[PROSECUTOR]: And the absence of prints is not evidence of his innocence. All that means is that they didn't get any prints of value. It would be great if they could have gotten more prints from that house. . . . That's not evidence that he is innocent. That just means that they didn't find any prints. *Get him to show you the evidence says those weren't his fingerprints. And, that he wasn't at 203 Northeast Street in the early morning hours of the 2nd of October, 1994.* Just happen to be breaking into the house here next to where two people were killed that Saturday night. *It just happened by chance to be doing that. I guess that's what they will . . . argue. Get them to show the evidence that he didn't have anything [sic] with the murders of Buchanan and Dowdy.*

[DEFENSE COUNSEL]: Your Honor, may I object and approach the bench?

THE COURT: Yes.

(Bench conference)

[DEFENSE COUNSEL]: He is telling the jury to make us show them the evidence. We have no burden of proof in this. He is putting the burden of proof [sic] and I assume that we do not have.

[PROSECUTOR]: That's not—

[DEFENSE COUNSEL]: I object to that argument.

[PROSECUTOR]: I am arguing that if we prove both cases—

THE COURT: I think that is legitimate. I think the case law holds that he can make such statements. But you have your objections noted.

(Emphasis added.)

"Admittedly, it is well-settled law that the burden of proof remains with the State regardless of whether a defendant presents any evidence, and it is well-settled law that a defendant need not tes-

tify, a fact which may not be commented on by the prosecutor." *State v. Howard*, 320 N.C. 718, 729, 360 S.E.2d 790, 796 (1987). However, in its closing argument, the State may properly bring to the jury's attention the failure of a defendant to produce exculpatory evidence or to contradict evidence presented by the State. *State v. Mason*, 317 N.C. 283, 287, 345 S.E.2d 195, 197 (1986). Further, "[a] prosecutor's challenged remarks must be reviewed in the overall context in which they were made and in view of the overall factual circumstances to which they referred." *State v. Penland*, 343 N.C. 634, 662, 472 S.E.2d 734, 750 (1996), *cert. denied*, 519 U.S. 1098, 136 L. Ed. 2d 725 (1997).

Applying these principles to the instant case, we conclude that the prosecutor's remarks did not shift the burden of proof in the trial. After carefully reviewing the challenged argument in the overall context in which it was made and in view of the overall factual circumstances to which it referred, we conclude that the prosecutor's argument was a comment on the strength of the State's evidence and the absence of any contradictory evidence. The prosecutor then speculated with the jury as to how the defense would explain away the evidence or would try to convince the jury that the absence of certain evidence would mean defendant was not guilty. While the prosecutor's argument came close to the line, we are satisfied that a reasonable jury would have understood the argument here in the context in which it was given, and not as shifting the burden of proof from the State to defendant. Accordingly, we find no prejudicial error.

In his tenth argument, defendant contends that the trial court committed reversible error in instructing the jury as to the murder of Buchanan that it could consider whether the murder was committed during the perpetration of a burglary since there was insufficient evidence to support the crime charged and since the indictment was fatally defective. Defendant, in his eleventh argument, makes similar contentions as to the murder of Dowdy. In argument twelve, based on two assignments of error, defendant contends that the trial court should have arrested judgment on the charges of first-degree murder as to both Dowdy and Buchanan for similar reasons. We reject defendant's tenth, eleventh, and twelfth arguments for the reasons discussed under defendant's argument seven.

[9] Defendant contends in his thirteenth argument that the trial court committed reversible error in denying his motion to suppress the identification of him by a witness whose opportunity to observe was so brief as to make the identification inherently incredible and thus

violative of his rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 19, 23, and 27 of the North Carolina Constitution.

In support of his argument, defendant relies upon *State v. Miller*, 270 N.C. 726, 154 S.E.2d 902 (1967), in which this Court decided that testimony identifying the defendant as the man seen running along the side of a building at night at a distance of 286 feet should not be submitted to a jury. In *Miller*, the Court noted that without the witness' testimony, the State's evidence would not have connected the defendant to the offense for which he was charged. *Id.* at 732, 154 S.E.2d at 905. However, where there is a " 'reasonable possibility of observation sufficient to permit subsequent identification,' " it is for the jury to decide the credibility of and the weight to be given the witness' testimony. *State v. Turner*, 305 N.C. 356, 363, 289 S.E.2d 368, 372 (1982) (quoting *Miller*, 270 N.C. at 732, 154 S.E.2d at 905).

In the instant case, the undisputed evidence supports an entirely different result. Bill Sessoms arrived at work in Roseboro around 7:00 am on Sunday, 2 October 1994. He was driving his vehicle and stopped at an intersection waiting to make a left turn. While he was waiting, he saw a young man walk across the street in front of his van and turn into the alley behind his shop. Sessoms drove into the alley and parked in front of his back door. Sessoms testified that the young man, who was directly in front of his van, was very heavily dressed for the weather that day. The man had on an old khaki-colored rain cap and a heavy coat that reached below his knees. He had the collar on the coat pulled up and the brim of his hat pulled down.

As Sessoms pulled up in his vehicle, the young man's collar fell down; the man pulled his collar back up and kept walking down the alley. Sessoms testified that he got out of the van and went inside the shop. He then came back out to see where the man had gone; the man had walked all the way to the end of the alley and then turned left towards the post office. Sessoms' observation occurred during the day, from about ten feet away, and lasted for a few seconds to a minute. Fifteen to twenty minutes later, the fire alarm went off, and one of the men working on the rescue squad told Sessoms that there was a fire at Buchanan's house. Sessoms saw a picture in the paper on Wednesday of that week and recognized the person in the picture as the man he had seen in the alley. Sessoms never viewed a photographic lineup or any other photos. The next time he saw defendant in person was in court. Here, the testifying witness not only observed

defendant during the day, from a short distance, but was also able to remark about defendant's unseasonable clothing.

The State argues under *State v. Sneed*, 327 N.C. 266, 393 S.E.2d 531 (1990), that the trial court did not err by allowing the identification into evidence for the jury's consideration. We agree. In this case, the identification testimony was admissible on grounds that there was "a reasonable possibility of observation sufficient to permit subsequent identification." *Miller*, 270 N.C. at 732, 154 S.E.2d at 906, *quoted in Sneed*, 327 N.C. at 273, 393 S.E.2d at 534; *see also State v. Coffey*, 326 N.C. 268, 283, 389 S.E.2d 48, 57 (1990) (concluding that identification not "incredible" where witnesses viewed defendant for varying lengths of time during the day at a reasonably close range). While Sessoms observed defendant for only a few to sixty seconds, this "limited opportunity for observation goes to the weight the jury might place upon [his] identification rather than its admissibility." *State v. Ricks*, 308 N.C. 522, 528, 302 S.E.2d 770, 773 (1983). Based on the foregoing, we reject defendant's thirteenth argument.

[10] Defendant, in his fourteenth argument, contends that the trial court committed reversible error in denying his motion to suppress any statements he gave to law enforcement officers, as the statements were not a product of his knowing, voluntary, and intelligent waiver of any of his rights and were thus in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 19, 23, and 27 of the North Carolina Constitution.

Around 8:00 a.m. on 5 October 1994, Special Agent Tilley of the State Bureau of Investigation and Captain Landis Lee of the Sampson County Sheriff's Department went to the detox center in Jacksonville and arrested defendant for the murders of Buchanan and Dowdy. When they arrived, defendant was asleep. They awakened him and told him about the warrants. Defendant got dressed and went with the officers to the SBI district office in Jacksonville. Defendant contends that any statement he made to the two officers should be suppressed because he was under the influence of drugs at the time they were given.

To determine whether an in-custody inculpatory statement is admissible, we must look to the totality of the circumstances. *Moran v. Burbine*, 475 U.S. 412, 421, 89 L. Ed. 2d 410, 421 (1986). Inculpatory statements made to law enforcement officers while a defendant is in custody are admissible as evidence of guilt whenever the totality of

the circumstances shows that the defendant knowingly, voluntarily, and intelligently waived his constitutional rights. *See State v. Johnson*, 322 N.C. 288, 292, 367 S.E.2d 660, 662 (1988). Findings of fact by the trial court are binding on the appellate courts if there is competent evidence to support those findings, even if there was evidence presented in the trial court which would have supported a different conclusion. *State v. Pittman*, 332 N.C. 244, 259, 420 S.E.2d 437, 446 (1992); *Johnson*, 322 N.C. at 293, 367 S.E.2d at 663.

The evidence regarding defendant's motion to suppress was essentially uncontradicted. Defendant was not handcuffed; he spoke clearly and coherently, understood questions, and made appropriate responses. Defendant's interrogation ended promptly when he asked for a lawyer. The trial judge found that defendant's incriminating statements were not made in response to interrogation by the officers, but were entirely voluntary. After reviewing the totality of the circumstances, we conclude that there is substantial evidence to support the trial court's findings of fact, and the findings support the trial court's conclusion that defendant's statements were made freely, voluntarily, and "understandingly." Accordingly, we reject defendant's fourteenth argument.

## III. CAPITAL SENTENCING PHASE

[11] In his fifteenth argument, defendant contends that the trial court committed reversible error by instructing the jury that one of the aggravating circumstances to be considered in the homicide of Buchanan was that the capital felony was committed for pecuniary gain pursuant to N.C.G.S. § 15A-2000(e)(6). Defendant contends that there was no evidence to support submission of this aggravating circumstance, and thus defendant's rights to due process and a fair trial as guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 19 and 23 of the North Carolina Constitution were violated.

Defendant contends that the evidence showed that the motivating factor for his breaking into Buchanan's apartment was to steal a gun for his own personal protection. Therefore, defendant argues, there was insufficient evidence to support a motive of pecuniary gain and the trial court erred in submitting this aggravating circumstance to the jury. We disagree. Although there was evidence that defendant told his cousin his intent in stealing the gun was to have it for protection, there was substantial evidence that defendant broke into buildings and automobiles that night to steal money or property that

could later be converted into drugs. Dowdy's empty wallet was discovered underneath his body, the house in which Dowdy and Buchanan lived had been ransacked, a phone was stolen from Buchanan's car, and items were removed from a storage building near the house. At the sentencing hearing, defendant himself presented evidence that he had a history of committing break-ins to support his drug habit. From this evidence the jury could infer that defendant's motive in stealing the gun was to exchange it or sell it for drugs.

Further, "[t]he gravamen of the pecuniary gain aggravating circumstance is that 'the killing was for the purpose of getting money or something of value.' " *State v. Jennings*, 333 N.C. 579, 621, 430 S.E.2d 188, 210 (quoting *State v. Gardner*, 311 N.C. 489, 513, 319 S.E.2d 591, 606 (1984), *cert. denied*, 469 U.S. 1230, 84 L. Ed. 2d 369 (1985)), *cert. denied*, 510 U.S. 1028, 126 L. Ed. 2d 602 (1993). The fact that defendant may have intended to steal the gun for his personal use does not change the fact that the killing was committed for the purpose of getting something of value. *See State v. Chandler*, 342 N.C. 742, 755, 467 S.E.2d 636, 644, *cert. denied*, 519 U.S. 875, 136 L. Ed. 2d 133 (1996). Therefore, the trial court did not err in submitting the (e)(6) aggravating circumstance. Accordingly, we reject defendant's fifteenth argument.

[12] In his sixteenth argument, defendant contends that the trial court erred by submitting as a mitigating circumstance that defendant had no significant history of prior criminal activity. N.C.G.S. § 15A-2000(f)(1) (Supp. 1998).

During the penalty-phase instructions conference, defense counsel indicated that they were not requesting the mitigating circumstance of no significant history of prior criminal activity. The following exchange occurred:

THE COURT: All right, now we get to the first bone of contention. The significant history of prior criminal activity before the date of the murder.

[DEFENSE COUNSEL]: Your Honor, we omitted that from our, from our statutory because there is no evidence of prior history. We don't want to simply put it on and let them, let them attack it, Your Honor. And, for that reason.

THE COURT: Well, you know, there is evidence, you know, from your physicians and your, and you know, from, from those as to the fact that he had been in prison or juvenile detention for

eight months and he had committed breaking and enterings and that he had, you know, used illegal drugs. However, there is no evidence as to convictions, but the cases do not really say we've got to have convictions. It said history.

[PROSECUTOR]: It's simply history of criminal activity and Your Honor.

[DEFENSE COUNSEL]: As a statutory mitigator and we do not contend for it, Your Honor. We are the ones that are opposed to the mitigators.

THE COURT: Well, I realize that but there are a couple of cases that would indicate that it is error not to submit it even over the defendant's objection if there is, is evidence under which a juror could conclude that or I guess you'd say lack of evidence.

Defendant asserts that the submission of the (f)(1) mitigating circumstance, over objection, along with the trial court's instruction and prosecutor's arguments were a violation of defendant's due process rights and guarantees of a fair trial under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 19, 23, and 27 of the North Carolina Constitution.

This Court has emphasized that the test governing the decision to submit the (f)(1) mitigator is " 'whether a rational jury could conclude that defendant had no *significant* history of prior criminal activity.' " *State v. White*, 343 N.C. 378, 394-95, 471 S.E.2d 593, 602-03 (quoting *State v. Wilson*, 322 N.C. 117, 143, 367 S.E.2d 589, 604 (1988)), *cert. denied*, 519 U.S. 936, 136 L. Ed. 2d 229 (1996); *see also State v. Walker*, 343 N.C. 216, 223, 469 S.E.2d 919, 922, *cert. denied*, 519 U.S. 901, 136 L. Ed. 2d 180 (1996). "Significant" has been defined as meaning that the jury's sentencing recommendation is likely to be influenced by the defendant's prior criminal activity. *Williams*, 350 N.C. at 11, 510 S.E.2d at 633; *see also State v. Williams*, 343 N.C. 345, 371, 471 S.E.2d 379, 393 (1996), *cert. denied*, 519 U.S. 1061, 136 L. Ed. 2d 618 (1997). If a rational jury could so conclude, the trial court has no discretion; the trial court must submit the statutory mitigating circumstance to the jury without regard to the State's or the defendant's wishes. *White*, 343 N.C. at 394-95, 471 S.E.2d at 603.

In the instant case, the evidence tended to show that defendant began drinking alcohol as a child and started using marijuana and cocaine when he was thirteen years old. A couple of years later,

defendant was committing break-ins to support his drug habit and was hospitalized for treatment of substance abuse. A forensic psychiatrist testified that defendant was frequently violent and gave examples of him striking a horse and fighting and biting the owner. At eighteen, defendant was sent to juvenile detention. Here, the trial court determined that a reasonable juror could find that defendant had "no significant history of prior criminal activity" within the meaning of the statute. Thus, the trial court properly submitted the (f)(1) statutory mitigating circumstance for the jury's consideration.

[13] During closing arguments, the prosecutor began to argue that the jury should not find the (f)(1) mitigating circumstance. After defendant's objection was made and sustained, the trial court instructed the jury that the (f)(1) mitigator was not requested by defendant; however, since there was some evidence from which a juror might find the circumstance, the court decided to submit it to the jury.

We have cautioned prosecutors and trial courts that when a defendant objects to the submission of a mitigating circumstance, prosecutors must not argue to the jury that a defendant has requested that a particular mitigating circumstance be submitted or has sought to have the jury find that circumstance. *Walker*, 343 N.C. at 223, 469 S.E.2d at 923. Also, in *Walker*, the Court emphasized that

> the better practice when a defendant has objected to the submission of a particular mitigating circumstance is for the trial court to instruct the jury that the defendant did not request that the mitigating circumstance be submitted. In such instances, the trial court also should inform the jury that the submission of the mitigating circumstance is required as a matter of law because there is some evidence from which the jury could, but is not required to, find the mitigating circumstance to exist.

*Id.* at 223-24, 469 S.E.2d at 923. In the instant case, the trial court instructed the jury that defendant did not request submission of the (f)(1) mitigating circumstance. While the trial court did not inform the jury that submission of the mitigating circumstance is required as a matter of law, we conclude that the omission was harmless when the instructions are viewed in their totality. Moreover, we conclude that the prosecutor's arguments were not misleading as to whether defendant requested submission of the (f)(1) mitigating circumstance. Accordingly, this assignment of error is rejected.

**[14]** In his seventeenth argument, defendant contends that the trial court committed reversible error in allowing the prosecutor to argue in his closing sentencing-phase argument, over defendant's objection, that the trial procedures guaranteeing defendant a fair trial were undeserved. Defendant contends that the prosecutor's argument attempted to create resentment in the jurors regarding the trial process and thereby denied defendant his rights to a fair trial as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 19, 23, and 27 of the North Carolina Constitution. Defendant contends that the prosecutor's closing argument denigrated the procedural safeguards provided to defendant under the law.

In the instant case, defendant complains of the following prosecutorial argument:

[PROSECUTOR]: He [defendant] is the master of his own faith. Let's not get all mixed up here. This will be the last time that I will talk to you about this. You have got to decide justice. He has put himself in this position. What has happened [since] he committed those murders on October 2nd, 1994? He has been given every right in the book. *He has been given food to eat and a warm place to stay. Healthcare, lawyers, social workers, psychiatrist.* He gets to visit with his family. He gets everything somebody alive would have. What about Alabama or Jerry Dowdy? They have not been here for the last two and a half years. And they are not going to be here for the next and the next after that. *They are not entitled to a presumption of innocence. They didn't get that. They didn't have a two part five week long trial. They didn't get a lawyer to plead their cases with Johnny Street Parker that night. Much less two lawyers.*

[DEFENSE COUNSEL]: Your Honor, I will object to that. The defendant is entitled to the defense as a matter of law. And now it has become affected [sic] aggravated factors even—for the defendant[]—

THE COURT: Okay. I am going to overrule it right now, Mr. Parker.

[PROSECUTOR]: *They didn't have anybody to stand up and object for them. They didn't have an opportunity to sit here and participate in these proceed[ings]. They didn't have a Judge to*

*see that [their] trial was fair. They didn't have a jury of twelve to decide their fate. They had a jury of one. They didn't get a hearing.*

(Emphasis added.)

In *State v. Soyars*, 332 N.C. 47, 60, 418 S.E.2d 480, 487 (1992), we said that trial counsel are granted wide latitude over the scope of jury argument and that "control of closing arguments is in the discretion of the trial court." Counsel are allowed to argue the facts which have been presented, along with reasonable inferences drawn from those facts. *State v. McCollum*, 334 N.C. 208, 223, 433 S.E.2d 144, 152 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). In order for defendant to receive a new sentencing proceeding, the prosecutorial comment must have " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Id.* at 223-24, 433 S.E.2d at 152 (quoting *Darden v. Wainwright*, 477 U.S. 168, 181, 91 L. Ed. 2d 144, 157 (1986)).

We assume, *arguendo*, that the italicized portions of the prosecutor's argument were improper. Nevertheless, the prosecutor did not directly attack defendant's exercise of his constitutional rights. *See State v. Walls*, 342 N.C. 1, 64, 463 S.E.2d 738, 772 (1995) (concluding that the prosecutor did not attack the defendant's exercise of constitutional rights by suggesting to the jury that the victims had "no lawyer, no jury, no bailiff, no judge and no legal rights"), *cert. denied*, 517 U.S. 1197, 134 L. Ed. 2d 794 (1996). Substantial evidence supported the aggravating circumstances submitted to the jury, and the jury was instructed that it should base its decision on the evidence alone and not on the arguments of counsel. For these reasons, it is unlikely that the jury's sentencing recommendations were influenced by these portions of the prosecutor's closing argument. Therefore, we conclude that the prosecutor's argument did not deny defendant due process.

[15] In his eighteenth argument, defendant contends that the trial court committed reversible error and violated his constitutional rights in failing to properly answer the jury's questions during deliberation as to whether two life sentences would be served consecutively or concurrently. The jury retired to begin deliberations in the sentencing phase and submitted a written request to define life imprisonment without parole, whether "life" meant twenty years or death by natural causes, whether there was a possibility of "time off

for good behavior," and whether the terms would be served consecutively or concurrently if the jury returned life imprisonment for both cases.

This Court has consistently held that parole eligibility evidence is irrelevant in a capital sentencing proceeding as it reveals nothing regarding defendant's character or record or about any circumstances of the offense. *State v. Payne*, 337 N.C. 505, 516, 448 S.E.2d 93, 99 (1994), *cert. denied*, 514 U.S. 1038, 131 L. Ed. 2d 292 (1995); *see also State v. Alston*, 341 N.C. 198, 219, 461 S.E.2d 687, 697 (1995), *cert. denied*, 516 U.S. 1148, 134 L. Ed. 2d 100 (1996). In *Simmons v. South Carolina*, 512 U.S. 154, 162-71, 129 L. Ed. 2d 133, 141-47 (1994), the United States Supreme Court determined that when the State argues "future dangerousness" in a capital sentencing proceeding and state law prohibits defendant's release on parole, due process requires the court to inform the jury that the life sentence faced by the defendant would be life imprisonment without parole. So where the State does not argue future dangerousness, as in the instant case, there is no due process requirement that the jury be informed that defendant would be parole ineligible under a life sentence.

However, N.C.G.S. § 15A-2002 provides:

If the recommendation of the jury is that the defendant be sentenced to death, the judge shall impose a sentence of death in accordance with the provisions of Chapter 15, Article 19 of the General Statutes. If the recommendation of the jury is that the defendant be imprisoned for life in the State's prison, the judge shall impose a sentence of imprisonment for life in the State's prison, without parole.

The judge shall instruct the jury, in words substantially equivalent to those of this section, that a sentence of life imprisonment means a sentence of life without parole.

N.C.G.S. § 15A-2002 (Supp. 1998).

Here, under *Simmons*, there was no due process requirement that the jury be informed that defendant would be parole ineligible under a life sentence. Nevertheless, pursuant to N.C.G.S. § 15A-2002, the trial court brought the jury back into the courtroom and instructed that "life" means life imprisonment "without parole." The trial court continued by instructing the jury that life imprisonment means "until death."

In addition, defendant contends that the trial judge erred by failing to tell the jurors what he would do if they returned two life sentences. With regard to this contention, we hold that the trial court properly instructed the jurors by stating the following: "It is not a proper matter for your consideration in this phase of the trial. That is my job to make that determination. And, I'm not allowed to tell you what I'm going to do because that should not influence your—verdict." The trial court has discretion to determine whether to impose concurrent or consecutive sentences. N.C.G.S. § 15A-1354(a) (1997). The trial court is not required to make its decision and inform the jury thereof before the jury deliberates. Hence, the trial court did not err, and we reject defendant's argument.

[16] In his nineteenth argument, based upon two assignments of error, defendant contends that the trial court committed reversible error in submitting to the jury both the (e)(5) aggravating circumstance that the murder of Buchanan was committed while defendant was engaged in the commission of another homicide and the (e)(11) aggravating circumstance that the murder of Buchanan was committed while defendant was engaged in a course of conduct which included the commission by defendant of another crime of violence (castration) against another person (Dowdy). Defendant contends that the (e)(11) aggravating circumstance subsumed the language in the (e)(5) aggravating circumstance. In addition, under this argument, defendant contends that the trial court committed reversible error in instructing the jury that it could consider the aggravating circumstance that the murder of Buchanan was committed while defendant was engaged in the commission of another homicide.

Defendant contends that the trial court's oral instruction failed to limit the class of violent crimes to castration because the instruction was hindered by the written "Issues and Recommendation as to Punishment" form subsequently given to the jury. Defendant asserts that by the written submission in the "Issues and Recommendation as to Punishment" form, the instructions made the act of castration one of many acts, or an example, of violence against other people rather than limiting the aggravating circumstance solely to castration. Defendant argues that, as a result, the trial court's oral instruction to the jury and the written words on the "Issues and Recommendation as to Punishment" form would allow a reasonable jury to utilize identical evidence to find both aggravating circumstances (e)(5) and (e)(11). We disagree.

In *State v. Conaway*, 339 N.C. 487, 530, 453 S.E.2d 824, 851, *cert. denied*, 516 U.S. 884, 133 L. Ed. 2d 153 (1995), we stated that

> submission of more than one aggravating circumstance supported by the same evidence "amount[s] to an unnecessary duplication of the circumstances enumerated in the statute, resulting in an automatic cumulation of aggravating circumstances against the defendant." *State v. Goodman*, 298 N.C. 1, 29, 257 S.E.2d 569, 587 (1979). However, where there is separate substantial evidence to support each aggravating circumstance, it is not improper for each aggravating circumstance to be submitted even though the evidence supporting each may overlap. *State v. Jennings*, 333 N.C. 579, 627-28, 430 S.E.2d 188, 213-14, *cert. denied*, [510] U.S. [1028], 126 L. Ed. 2d 602 (1993).

Further, this Court has specifically upheld the submission of both the (e)(5) and (e)(11) aggravating circumstances in the same case. *See Wilkinson*, 344 N.C. at 228, 474 S.E.2d at 391.

In the instant case, there was substantial separate evidence to support the (e)(5) aggravating circumstance that Buchanan's murder was committed while defendant was engaged in the commission of Dowdy's murder and the (e)(11) aggravating circumstance that Buchanan's murder was committed while defendant was engaged in a course of conduct which included commission of the crime of malicious castration. The evidence shows that, on 2 October 1994, defendant committed a series of crimes as a part of a continuous transaction of criminal activity.

With regard to defendant's contention that the trial court erred in its oral instructions to the jury, we note that defendant failed to object to that portion of the instruction which he contends improperly led the jury to consider the Dowdy homicide in support of two aggravating circumstances in the Buchanan homicide. Since defendant argues plain error on review, he must show that the error was so fundamental that another result would probably have been obtained absent the error. *See State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983). In the instant case, defendant cannot meet this standard.

A jury charge must be construed contextually and will be upheld when the charge is correct as a whole. *State v. Stephens*, 347 N.C. 352, 359, 493 S.E.2d 435, 439 (1997), *cert. denied*, —— U.S. ——, 142 L. Ed. 2d 66 (1998). The challenged portion of the oral instruction

closely followed the pertinent pattern jury instructions. *See* N.C.G.S. § 15A-2000; N.C.P.I.—Crim. 150.10 (1997). The instruction correctly informed the jury that the only violent crime which could be considered to support the (e)(11) aggravating circumstance was Dowdy's castration. The wording of the circumstance on the "Issues and Recommendation as to Punishment" form further clarified the instruction. There is no reasonable likelihood that the trial court's instructions would have caused the jurors to consider the murder of Dowdy to support both aggravating circumstances. Defendant's argument based upon these two assignments of error is rejected.

In his twentieth argument, defendant contends that the trial court committed reversible error in submitting to the jury the (e)(5) aggravating circumstance that the murder of Buchanan was committed while defendant was engaged in the commission of arson because there was insufficient evidence to support the submission of that aggravating circumstance. The State argues that there was substantial evidence presented to show that Buchanan's residence was an occupied dwelling at the time it was burned by defendant, as the interval between the mortal blow and the arson was short, and the murder and arson constituted parts of a continuous transaction. We agree. *See State v. Jaynes*, 342 N.C. 249, 273-74, 464 S.E.2d 448, 464 (1995) (concluding that the interval of three and one-half hours between murder and arson was short enough to be one continuous transaction), *cert. denied*, 518 U.S. 1024, 135 L. Ed. 2d 1080 (1996).

[17] In his twenty-first argument, defendant contends that the trial court committed reversible error in submitting the (e)(11) aggravating circumstance that the murder of Buchanan was part of a course of conduct in which defendant engaged, including the commission of another crime of violence against another person (castration of Dowdy). As in a previous argument, defendant contends that there is insufficient evidence to prove that the crime of castration occurred. Defendant assumes that the castration conviction will be reversed for insufficiency of the evidence. Thus, defendant concludes that the death sentence must be vacated because there is a reasonable possibility that the consideration by the jury of the castration charge might have contributed to the recommendation of the death penalty. *See State v. Robbins*, 319 N.C. 465, 516-17, 356 S.E.2d 279, 309-10, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987). Defendant's contention has no merit.

As discussed earlier in defendant's second argument, there was sufficient evidence that the crime of malicious castration was com-

mitted in conjunction with Dowdy's murder as part of a continuous chain of events forming one single transaction. Since the malicious castration was a part of a continuous, single transaction, the malicious castration was a violent felony committed against Dowdy and was a part of a course of conduct including the murder of Buchanan. Thus, the trial court properly submitted the (e)(11) aggravating circumstance.

[18] In his twenty-second argument, defendant contends that the trial court committed reversible error in submitting as an aggravating circumstance that the murder of Dowdy was committed while defendant was engaged in flight after committing another homicide, see N.C.G.S. § 15A-2000(e)(5), as there was no evidence to support submission of this aggravating circumstance. Defendant contends that since the State failed to present competent evidence that the killing of Dowdy was committed during flight, there was no direct evidence of the order in which the two men were murdered.

The State correctly contends that defendant has waived his right to assign error to the trial judge's instructions by failing to object to the language of the instructions at the time they were given or before the jury retired to deliberate. See N.C. R. App. P. 10(b)(2); Allen, 339 N.C. at 554-55, 453 S.E.2d at 155. Since this issue was not properly preserved for appeal, this Court may review it only for plain error. Allen, 339 N.C. at 555, 453 S.E.2d at 155. The plain error rule requires defendant to show that the error was so fundamental that another result would probably have been obtained absent the error. Odom, 307 N.C. at 661, 300 S.E.2d at 378-79. The State further contends that defendant waived plain error review by failing to allege in his assignment of error that the trial court committed plain error. See N.C. R. App. P. 10(c)(4); see also State v. Truesdale, 340 N.C. 229, 232-33, 456 S.E.2d 299, 301 (1995); State v. Hamilton, 338 N.C. 193, 208, 449 S.E.2d 402, 411 (1994). We agree. In the instant case, defendant failed to specifically and distinctly contend that the trial court's submission of the (e)(5) aggravating circumstance was plain error. Thus, defendant has waived his right to appellate review of this issue.

[19] In his twenty-third argument, defendant contends that the trial court committed reversible error in submitting to the jury as an aggravating circumstance that the murder of Dowdy was committed by defendant while defendant was engaged in the commission of arson, see N.C.G.S. § 15A-2000(e)(5), as there was insufficient evidence to submit that aggravating circumstance to the jury. Defendant

contends that there was no evidence that there was any burning in connection with Dowdy's apartment. The State contends, and we agree, that such evidence is not required where the burning of the downstairs apartment and the murder of Dowdy were parts of a continuous transaction.

If the interval between the mortal blow and the arson is short, and the murder and arson constitute parts of a continuous transaction, then a dwelling is "occupied" for purposes of the arson statute. *See* N.C.G.S. § 14-58 (1995); *see also Jaynes*, 342 N.C. at 274, 464 S.E.2d at 464. In *Jaynes*, this Court held that the interval of three and one-half hours between the victim's death and the setting of the fire did not prevent a finding "based on all the surrounding circumstances that the interval was 'short' enough for the arson and the murder to be parts of one continuous transaction." *Jaynes*, 342 N.C. at 275, 464 S.E.2d at 464. Construing the evidence in the light most favorable to the State in the instant case, defendant carried out the murder of Dowdy and the arson as parts of a continuous transaction. The record shows that the deaths of Dowdy and Buchanan occurred somewhere around 3:30 a.m. or 4:00 a.m., and possibly as late as 7:00 a.m., on Sunday, 2 October 1994. The fire was set using lamp oil or lighter fluid and burned for some twenty minutes to one hour. The fire department received the fire call at approximately 7:25 a.m. Hence, under *Jaynes*, the murder of Dowdy and the arson occurred under a short span of time and as parts of a continuous transaction. The trial court properly submitted the aggravating circumstance that the murder of Dowdy was committed while defendant was engaged in the commission of arson.

[20] In his twenty-fourth argument, defendant contends that the trial court committed reversible error in allowing the prosecutor to argue in his sentencing-phase closing argument that with regard to many of the aggravating circumstances, the jurors had already found them to exist by their verdicts. Defendant did not object to this argument. Where a defendant fails to object to the prosecutor's argument at trial, "the impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it." *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979), *quoted in State v. Hoffman*, 349 N.C. 167, 185, 505 S.E.2d 80, 91 (1998), *cert. denied*, —— U.S. ——, —— L. Ed. 2d ——, 67 U.S.L.W. 3613 (1999).

In the instant case, none of defendant's convictions from the guilt phase that were used to support either of his convictions of first-degree murder were used as aggravating circumstances for the same murder in the sentencing phase. In his argument, the prosecutor was merely urging the jurors to understand how their earlier verdicts compared to the aggravating circumstances and to urge them to so find in their sentencing determination. This argument did not encourage the jury to engage in impermissible double-counting. Clearly the prosecutor's argument was not so grossly improper as to require the trial court to intervene *ex mero motu*. Therefore, we reject defendant's twenty-fourth argument.

## IV. PRESERVATION ISSUES

Defendant's twenty-fifth through twenty-ninth arguments are essentially preservation issues. Defendant acknowledges that we have decided these issues contrary to his position, but asks us to reconsider those decisions. We reject each of these arguments on the authority of the cases cited:

The trial court's instruction on Issue Three of the "Issues and Recommendation as to Punishment" form, directing the jury to continue to Issue Four if the mitigating circumstances were of equal value and failed to outweigh aggravating circumstances, violated defendant's constitutional rights. *State v. Keel*, 337 N.C. 469, 493, 447 S.E.2d 748, 761 (1994), *cert. denied*, 513 U.S. 1198, 131 L. Ed. 2d 147 (1995).

The trial court's instruction that permitted jurors to reject submitted mitigation on the basis that it had no mitigating value violated defendant's constitutional rights. *Walton v. Arizona* 497 U.S. 639, 111 L. Ed. 2d 2511 (1990); *State v. Johnson*, 298 N.C. 47, 257 S.E.2d 597.

The trial court's use of the term "may" in sentencing Issues Three and Four violated defendant's constitutional rights. *State v. McNeill*, 349 N.C. 634, 653, 509 S.E.2d 415, 426 (1998); *State v. Geddie*, 345 N.C. 73, 104, 478 S.E.2d 146, 162 (1996), *cert. denied*, — U.S. —, 139 L. Ed. 2d 43 (1997).

The trial court's submission of the '(e)(9) aggravating circumstance that the murder was especially heinous, atrocious, or cruel violated defendant's rights to due process and to be free from cruel and unusual punishment, on the grounds that the language is unconstitutionally vague. *State v. Syriani*, 333 N.C. 350, 391-92, 428 S.E.2d 118, 141, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993).

The trial court's instructions defining the burden of proof applicable to mitigating circumstances violated defendant's constitutional rights by using the inherently ambiguous and vague terms "satisfaction" and "satisfy" to define the burden of proof. *Payne*, 337 N.C. at 531-33, 448 S.E.2d at 108-09; *State v. Franks*, 300 N.C. 1, 17, 265 S.E.2d 177, 186 (1980).

Having carefully considered defendant's arguments on these issues, we find no compelling reason to depart from our prior holdings. Accordingly, we reject these arguments.

## V. PROPORTIONALITY

Defendant did not make an argument related to proportionality. Nevertheless, this Court is required by statute to review the record in all capital cases to determine (1) whether the record supports the jury's findings of the aggravating circumstances on which the sentences of death were based; (2) whether the death sentences were entered under the influence of passion, prejudice, or other arbitrary consideration; and (3) whether the death sentences are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2).

In the Buchanan murder, the following aggravating circumstances were submitted to and found by the jury: (1) that the murder was committed by defendant while he was engaged in the commission of first-degree arson, N.C.G.S. § 15A-2000(e)(5); (2) that the murder was committed by defendant while he was engaged in the commission of another homicide, N.C.G.S. § 15A-2000(e)(5); (3) that the murder was committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6); and (4) that the murder was part of a course of conduct in which defendant engaged and which included the commission by defendant of other crimes of violence against another person or persons, N.C.G.S. § 15A-2000(e)(11). In the Dowdy murder, the aggravating circumstances submitted to and found by the jury were: (1) that the murder was committed by defendant while he was engaged in the commission of first-degree arson, N.C.G.S. § 15A-2000(e)(5); (2) that the murder was committed by defendant while he was engaged in flight after the commission of another homicide, N.C.G.S. § 15A-2000(e)(5); and (3) that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9). After thoroughly examining the record, transcripts, and briefs in the present case, we conclude that the record fully supports the aggravating circumstances

submitted to and found by the jury. Further, we find no indication that the sentences of death were imposed under the influence of passion, prejudice, or any other arbitrary consideration. We must now turn to our final statutory duty of proportionality review.

**[21]** In our proportionality review, it is proper to compare the present case with cases in which this Court has concluded that the death penalty was disproportionate. *McCollum*, 334 N.C. at 240, 433 S.E.2d at 162. We have found the death penalty disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983).

We conclude that this case is not substantially similar to any case in which this Court has found the death penalty disproportionate. The instant case is distinguishable in the following ways: (1) defendant was convicted of first-degree murder of Dowdy under the theory of premeditation and deliberation; (2) defendant shot Buchanan directly in the face at close range; (3) defendant showed no remorse for the brutal murder and castration of Dowdy; and (4) defendant murdered both victims in their homes.

It is also proper to compare this case to those where the death sentence was found proportionate. *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. However, it is unnecessary to cite every case used for comparison. *Id.* This Court has never found the death penalty to be disproportionate where the defendant was convicted of killing more than one victim. *See, e.g., State v. Warren*, 348 N.C. 80, 129, 499 S.E.2d 431, 459, *cert. denied*, —— U.S. ——, 142 L. Ed. 2d 216 (1998); *State v. Harden*, 344 N.C. 542, 566, 476 S.E.2d 658, 671 (1996), *cert. denied*, 520 U.S. 1147, 137 L. Ed. 2d 483 (1997). In this case, both victims were murdered in the sanctity of their own homes. Such a murder " 'shocks the conscience, not only because a life was senselessly taken, but because it was taken [at] an especially private place, one [where] a person has a right to feel secure.' " *Frye*, 341 N.C. at 512, 461 S.E.2d at 686 (alteration in original) (quoting *State v. Brown*, 320 N.C. 179, 231, 358 S.E.2d 1, 34, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987)).

After comparing this case to other roughly similar cases as to the crime and the defendant, we conclude that this case has the characteristics of first-degree murders for which we have previously upheld the death penalty as proportionate. Accordingly, we cannot conclude as a matter of law that the sentences of death are excessive or disproportionate. Therefore, the judgments of the trial court must be and are left undisturbed.

NO ERROR.